## MOYLE v. NATIONAL PETROLEUM TRANSPORT CORPORATION.

### No. 339.

Circuit Court of Appeals, Second Circuit.

July 18, 1945.

Reid, Cunningham & Freehill, of New York City (Frederick H. Cunningham, of New York City, of counsel), for defendant-appellant.

George J. Engelman, of New York City, for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action by the plaintiff, a seaman on the defendant's S.S. Transoil, to recover maintenance and cure. He testified that he was well when he joined the ship on November 9, 1936, that he worked thereon as an oiler and later became ill with headaches, fever and continuous coughing and about five days prior to January 15, 1937, was unable to work as an oiler or to stand watch and for that reason was discharged by the First Engineer while the ship was at her dock in Buffalo. On leaving the Transoil he received from the master a certificate for hospitalization which entitled him to free treatment at the Buffalo Marine Hospital. In the afternoon of the same day he took a standby job with light work on the oil tanker Ulysses and remained on her from five to seven days. Since his condition had not improved he went to his home in Akron, New York and remained there for about three weeks under treatment by a local physician without getting any better. On February 17, 1937, he went to the Buffalo Marine Hospital and stayed there for ten days. The diagnosis of the Marine Hospital was "common cold, asthma, bronchial." While in the hospital his condition improved and he was discharged on February 27, with the notation on the hospital records of "N.F.H.N.," i.e., no further hospitalization necessary, and again went home. His asthma, however, returned in a few days and on April 6th, he again went to the hospital from which he was discharged on April 13 at his own request,

with the notation "N.F.H.N." and an entry indicating that his asthmatic condition was unchanged. He then went back home and remained there for about a month. Thereafter, in the hope of benefiting from a change of climate he and his wife went south, joined a travelling road show and obtained a concession from it to conduct various games of chance as a means of support. This employment lasted until November 1937. After that he went to Jacksonville and spent several months there and in February 1938 came to New York and attended Bellevue Hospital as an outpatient, where he was examined and treated for asthma. In the spring of 1938 he went with another road show but in the fall came back to New York where he went on relief and continued on relief until about November 1942. During this period of about four years he was from time to time treated for asthmatic trouble for short periods at Bellevue and also at the Flower and Post Graduate Hospitals. About November 1942 his wife secured a job in a defense plant at Oneonta, New York. They both went there to live during the winter and for 27 days he was employed in driving army trucks to Syracuse. As the cold weather in the north proved bad for his asthma he moved with his wife to Phoenix, Arizona, in the spring of 1943, where they have since lived. He was employed there for three weeks and a day in a butcher's shop and for two weeks on a government housing project. The amounts of money he received during the various periods when he was employed and the amounts received while on relief were not stated in the record.

During the periods we have mentioned his asthma continued, greatly interfered with his ability to earn a living and at best only permitted him to do light work and that only at intervals. He testified that he spent $100 per year for medicines which he took for his asthma and about $15 per year for treatment by physicians. In the records of one of the hospitals it was stated that he had been a subject of asthma for 20 years but he denied this and testified that before joining the S. S. Transoil he had but one attack some eighteen years before and was in good health up to the time that he became ill with asthma about five days before leaving the ship.

Prior to April 13, 1937, when he left the Marine Hospital at his own request he had been at home and unemployed since

leaving the Ulysses for periods aggregating 72 days. The treatment he received in the Marine Hospital and the hospitals he subsequently attended was given free. Under the court's charge the plaintiff was entitled to recover maintenance for a reasonable time after he left the ship as well as expenditures for medicine and doctors' bills, but from such "reasonable time" was to be deducted periods when he was employed and also periods when he was on relief. Because of the provisions of Section 104 of the New York Social Welfare Law, Consol. Laws, c. 55, he doubtless was not obliged to deduct the period while he was on relief, but the plaintiff who alone could complain of the charge in this respect while urging the point has not appealed.

■ The complaint alleged that the plaintiff, while aboard the steamship, became sick, that a preexisting illness was aggravated and made more serious and that by reason thereof he became disabled in the service of said steamship. The plaintiff was the only witness testifying at the trial and on his testimony the jury rendered a verdict of $1800 for maintenance and cure on which a judgment was entered in his favor for $1,848.50 from which the defendant has appealed.

The appellant does not seem seriously to question the plaintiff's right to recover for maintenance and cure during the periods while he was at home and unemployed which were prior to the time that he was discharged from the Marine Hospital at his own request on his second visit there in April 1937. But it contends that his action in obtaining a discharge at his own request precluded recovery for any additional period. There is, however, no evidence that further hospital treatment would have benefited the plaintiff at that particular time and the hospital record shows a discharge with the notation N.F.H.N. which signified "no further hospitalization needed." The contention that the mere act of leaving deprived him of all further right to maintenance and cure is directly contrary to our decision in Rey v. Colonial Navigation Co., 2 Cir., 116 F.2d 580, 584, where a voluntary departure of a seaman from a Marine Hospital which was not against the orders or advice of the doctors was held not to preclude him from recovering further maintenance and cure from the shipowner. The seaman in that case, who was suffering from tuberculosis, when about to leave the hospital told the doctor that he would spend the summer on a farm and we regarded it as reasonable to suppose that under the circumstances the doctor thought life on a farm would be as beneficial as further hospitalization and acquiesced in the discharge from the hospital accordingly. In the case at bar the records of the Marine Hospital for April 13, 1937, indicated that no further hospitalization was then necessary. At that time the seaman thought he would like "a change of climate" and so purchased a trailer and with his wife motored to the south and joined the road show. The foregoing undisputed facts dispose of the appellant's contention that the trial court erred in refusing to instruct the jury that the plaintiff was not entitled to recover for any period subsequent to his second visit to the Marine Hospital.

■ The final contention of appellant's counsel is that the District Court should have granted the defendant's motion to set aside the verdict because it was excessive. We have already said that the refusal to limit recovery to the period prior to April 6, 1937 was proper. The instructions which left the jury to determine what was a fair time within which allowance for maintenance and cure might be made were in accordance with the decision of the Supreme Court in Calmar S. S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. At page 530 of 303 U.S., 58 S.Ct. 654, it was said by Justice Stone:

"* * * But we find no support in the policies which have generated the doctrine for holding that it imposes on the ship owner an indefinitely continuing obligation to furnish medical care to a seaman afflicted with an incurable disease, which manifests itself during his employment, but is not caused by it. So far as we are advised, it is without support in the authorities. We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie the imposition of the obligation. Beyond this we think there is no duty, at least where the illness is not caused by the seaman's service.

* * * * * *

"The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which.

he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained."

■ If it be suggested that under the foregoing pronouncement some time limit for recovery ought to have been set in a case such as this where the illness came on the seaman nearly five and one-half years before he brought his action and almost eight years before the trial in November 1944, no criticism of the sort was made before the district court and no request is found in the record that the Judge define further than was done what ought to be a reasonable period within which to recover an allowance for maintenance and cure. In Loverich v. Warner, 118 F.2d 690, the Circuit Court of Appeals for the Third Circuit awarded maintenance and cure for a more liberal period than the jury granted in the case at bar. There was a vigorous dissent by Judge William Clark who argued that the allowance which in that case was for eight years (with deductions of periods when the seaman received wages from other sources than the defendant) was for too long a period and was not justified by the decision of the Supreme Court in Calmar S.S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. But the respondent, Warner Co., applied to the Supreme Court for a writ of certiorari and the writ was denied in Loverich v. Warner Co., 313 U.S. 577, 61 S.Ct. 1104, 1105, 85 L.Ed. 1535. Loverich v. Warner Co., 3 Cir., 118 F.2d 690, was a suit in admiralty so that there the appellate court had some freedom to control the decision of the trial judge and itself to define what was a reasonable time after the seaman's service on the ship terminated within which he was entitled to maintenance and cure. But the present action was at law and tried before a jury and it is hard to see how the judge could have done anything except leave the jury to determine what was a reasonable time. At any rate, he was not asked to do anything else except to preclude recovery for any period after April 6, 1937, a request properly refused.

■ We have many times declined to review orders denying motions to set aside verdicts as excessive. Even if we had the power to review such orders, the verdict of $1800 can hardly be regarded as transcending the province of the jury. At a per diem rate of $2 per day and $2.75 for the year immediately preceding the trial, which were stipulated by the parties as fair rates for computing cost of maintenance, the verdict of $1800 would represent only an aggregate period of about two years and, if the jury allowed plaintiff's estimate of his medical and doctors' expenses, would represent only a period of about one year. If it was to be allowed any freedom in determining what period was a reasonable one for granting maintenance and cure, the verdict could hardly have been set aside as excessive and certainly cannot be held by this court to have been outside any proof in the case.

Judgment affirmed.