## JOHNSON *v.* UNITED STATES.

No. 138. Argued December 10, 1947.—Decided February 9, 1948.

██ ██

*David A. Fall* and *Silas Blake Axtell* argued the cause for petitioner. With them on the brief was *Myron Scott.*

*Samuel D. Slade* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Herbert A. Bergson, W. Leavenworth Colby, John R. Benney* and *Alvin O. West.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case is here on a petition for a writ of certiorari which we granted because of the seeming misapplication by the court below of *Jesionowski* v. *Boston & Maine R. Co.,* 329 U. S. 452.

Petitioner was a seaman on S. S. Mission Soledad, a steam tanker owned and operated by the United States. He was on the main deck rounding in two blocks, an operation which followed the cradling of the boom. One block was attached to the outer end of the boom by a wire rope. The other block was being held by a shipmate, one Dudder, who stood above petitioner on the meccano deck, a structure of beams which had been erected on the main deck. Petitioner was taking in the slack by pulling on the free end of the rope which ran through the two blocks. As he pulled on the rope the two blocks were brought together. When that was done Dudder had to walk forward with the block he held at a rate of speed controlled by petitioner. The operation went forward smoothly. Petitioner would pull on the rope, Dudder would walk forward, and then petitioner would stop to coil the accu-

mulated free line. Petitioner and Dudder had worked harmoniously, neither one jerking on the line nor interfering with the other's function. There was no fouling of the lines; the rope was taut and ran free.

We have only a partial account of how the injury to petitioner occurred. Dudder was not called. The only testimony we have is from petitioner and his version of the episode is uncontradicted. The block which it was Dudder's duty to hold (and which weighed 25 or 30 pounds) was permitted to fall; it hit petitioner on the head and caused the injury for which this libel *in personam* (see 41 Stat. 525, 46 U. S. C. § 742) was filed under the Jones Act, 38 Stat. 1185, as amended, 41 Stat. 1007, 46 U. S. C. § 688. Dudder, as we have said, was standing above petitioner. It is not certain why the block fell. Petitioner was hit without warning. When hit, he was bending over coiling the line on the deck.

The rule of *res ipsa loquitur* applied in *Jesionowski* v. *Boston & Maine R. Co., supra,* means that "the facts of the occurrence warrant the inference of negligence, not that they compel such an inference." *Sweeney* v. *Erving,* 228 U. S. 233, 240. We need not determine what the result would be if it were shown that petitioner was pulling on the rope when the accident happened. For the uncontradicted evidence is that he was not pulling on the rope but was bending over coiling it on the deck. A man who is careful does not ordinarily drop a block on a man working below him. Some external force might conceivably compel him to do so. But where, as here, the injured person is not implicated (*Jesionowski* v. *Boston & Maine R. Co., supra*), the falling of the block is alone sufficient basis for an inference that the man who held the block was negligent. In short, Dudder alone remains implicated, since on the record either he or petitioner was the cause of the accident and it appears that petitioner was not responsible.

The Jones Act makes applicable to these suits the standard of liability of the Federal Employers' Liability Act, 35 Stat. 65, as amended, 53 Stat. 1404, 45 U. S. C. § 51. Thus the shipowner becomes liable for injuries to a seaman resulting in whole or in part from the negligence of another employee. See *De Zon* v. *American President Lines,* 318 U. S. 660, 665. And there is no reason in logic or experience why *res ipsa loquitur* is not applicable to acts of a fellow servant. See *Lejeune* v. *General Petroleum Corp.,* 128 Cal. App. 404, 18 P. 2d 429; *Johnson* v. *Metropolitan Street R. Co.,* 104 Mo. App. 588, 592–593, 78 S. W. 275, 276. True, the doctrine finds most frequent application in cases of injuries arising from instruments or properties under the employer's exclusive control. *San Juan Light & Transit Co.* v. *Requena,* 224 U. S. 89; *Jesionowski* v. *Boston & Maine R. Co., supra; Lukon* v. *Pennsylvania R. Co.,* 131 F. 2d 327; *Sweeting* v. *Pennsylvania R. Co.,* 142 F. 2d 611. Inherent, however, in the negligence inferred in that type of case is an act or failure to act by an individual. While the acts of negligence underlying such accidents may reach higher into the management hierarchy than the one involved here, the Federal Employers' Liability Act compels us to go no higher than a fellow servant. See *Terminal R. Assn.* v. *Staengel,* 122 F. 2d 271.

No act need be explicable only in terms of negligence in order for the rule of *res ipsa loquitur* to be invoked. The rule deals only with permissible inferences from unexplained events. In this case the District Court found negligence from Dudder's act of dropping the block since all that petitioner was doing at the time was coiling the rope. The Circuit Court of Appeals reversed, 160 F. 2d 789, feeling that petitioner might have pulled the block out of Dudder's hands. It reasoned that, although petitioner testified he was bending over coiling the rope when the block hit him, the concussion may have caused

a lapse of memory which antedated the actual injury. The inquiry, however, is not as to possible causes of the accident but whether a showing that petitioner was without fault and was injured by the dropping of the block is the basis of a fair inference that the man who dropped the block was negligent. We think it is, for human experience tells us that careful men do not customarily do such an act.

Petitioner presses here his claim for maintenance and cure which was rejected by both courts below. He was hospitalized by respondent for a number of weeks following the accident. He was then found unfit for sea duty and doctors of the Public Health Service recommended that he enter various government hospitals. He refused and went instead to live on the ranch of his parents. We need not decide whether an agreement between petitioner and the government doctors for out-patient treatment and rest at his home might be inferred. Cf. *Rey* v. *Colonial Navigation Co.,* 116 F. 2d 580; *Moyle* v. *National Petroleum Transport Corp.,* 150 F. 2d 840. For there is ample evidence to support the findings of the two lower courts that petitioner had incurred no expense or liability for his care and support at the home of his parents. See *Field* v. *Waterman S. S. Corp.,* 104 F. 2d 849. On that issue we affirm the Circuit Court of Appeals. On the issue of negligence we reverse it.

*So ordered.*

MR. JUSTICE FRANKFURTER dissenting in part.

What is this case? It is a suit by the petitioner, a seaman, for an injury sustained while working on a vessel owned and operated by the United States. Under existing law the United States is liable only if it failed in its duty of exercising reasonable care in safeguarding its employees—the United States is liable, that is, only if it was negligent. And it is up to the plaintiff to prove such negligence.

What is the plaintiff's claim here? It is that while the petitioner and a fellow seaman named Dudder were working together in an operation known as "rounding in" blocks to bring two blocks of a block and tackle together, somehow or other a block fell and struck the petitioner, who was operating on a deck below Dudder, on the head. The claim is that the block which hit petitioner was negligently released by Dudder and that the United States is responsible for Dudder's negligence. (The "fellow servant rule" is not a defense under the Jones Act which authorizes this suit. 38 Stat. 1185, as amended, 41 Stat. 1007, 46 U. S. C. § 688.) There were no witnesses to this happening besides Dudder and Johnson. The only sources of knowledge for ascertaining what actually happened—whether fault lay with Dudder or Johnson or with nobody, as the law determines fault—were the accounts which Dudder and Johnson might furnish and such inferences as human experience could reasonably draw from the occurrence itself.

What evidence does the record disclose? Of the two available witnesses only one testified. That was the petitioner. It is accurate to state, therefore, that his version of what immediately preceded the injury was uncontradicted. But it is no less true that he was unable to furnish any evidence bearing on the cause of the happening.[1] His testimony has not established that it was the carelessness of Dudder that caused the block to fall out

---

[1] Petitioner testified:

"Q. Now, when you were standing there just before the accident, in the last thing you knew before the accident happened, what were you doing?

"A. I was coiling the line on the well deck or the Maccano [sic] deck.

"Q. Standing up or leaning over?

"A. I was bending over.

"Q. Then what happened?

"A. That is all I remember."

of Dudder's hand rather than a careless jerk of the rope by himself which caused such release. Dudder was available as a witness but he was not called. The United States in fact had Dudder's deposition taken before the trial, and it was placed at Johnson's disposal. Neither party, for reasons of its own, called Dudder as a witness or introduced his deposition.

What conclusions are to be drawn from the facts as they were developed at the trial? It is not the business of this Court to conduct the trial of a case or, even where a case is technically open here on the facts, to sit in independent judgment on the facts. If a case like this is to be allowed to come here at all, we sit in judgment on the proceedings in their entirety. This is a proceeding in Admiralty tried by a judge and not a jury. The trial judge, who heard the testimony and who was in the best possible position to weigh what he heard and saw, died before he gave his view of the testimony. By agreement, the cause was then submitted for judgment by another district judge on the basis of the cold record. He decided for the petitioner. The United States then appealed to the Circuit Court of Appeals for the Ninth Circuit. Three other judges on the basis of the same dead record reversed the district judge. 160 F. 2d 789. The result is that on the issue whether the United States is liable because one of its employees was negligent— that is, whether Dudder in fact carelessly let the block slip out of his hands—one judge said yes, and three judges said no.

What is the applicable law? My brethren say the circumstances speak for themselves in establishing Dudder's negligence. This means that the three judges below should have found, and this Court must now find, that the record proves that the injury can only be explained by Dudder's carelessness—for the petitioner, it deserves repeating, must have established Dudder's carelessness in

order to hold the United States liable. I agree that if the rule of *res ipsa loquitur* determines this case, the scope of that rule is found in *Sweeney* v. *Erving,* 228 U. S. 233, reaffirmed last term as a "decision which cut through the mass of verbiage built up around the doctrine of *res ipsa loquitur." Jesionowski* v. *Boston & Maine R. Co.,* 329 U. S. 452, 457. But these two sentences are a vital part of the *Sweeney* case: *"Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." 228 U. S. at 240. Therefore, even if the rule of *res ipsa loquitur* is here relevant, it should not by itself sustain a finding for the petitioner, "for the reason that in cases where that rule does apply, it has not the effect of shifting the burden of proof." 228 U. S. at 238. Since we cannot tell from the record how the injury to the petitioner occurred—it certainly was not established why the block fell—I cannot escape the conclusion that petitioner failed to sustain his burden of proving by a fair preponderance of the evidence that his injuries were attributable to the respondent's negligence. Cf. the *Jesionowski* case, *supra* at p. 454.

But I do not believe that *res ipsa loquitur* is applicable here. It is, after all, a "rule of necessity to be invoked only when necessary evidence is absent and not readily available." See Cooley, Torts (4th ed.) § 480. Here the evidence as to the cause of petitioner's injuries was admittedly available, and it would seem to follow that since what actually happened could have been adjudicated, it should have been adjudicated. Therefore, I would affirm the judgment of the court below but modify its mandate so that there may be a new trial on this issue and an adjudication based upon an adequate determination.

While a court room is not a laboratory for the scientific pursuit of truth, a trial judge is surely not confined to

an account, obviously fragmentary, of the circumstances of a happening, here the meagre testimony of Johnson, when he has at his command the means of exploring them fully, or at least more fully, before passing legal judgment. A trial is not a game of blind man's buff; and the trial judge—particularly in a case where he himself is the trier of the facts upon which he is to pronounce the law—need not blindfold himself by failing to call an available vital witness simply because the parties, for reasons of trial tactics, choose to withhold his testimony.

Federal judges are not referees at prize-fights but functionaries of justice. See *Herron* v. *Southern Pacific Co.*, 283 U. S. 91, 95; *Quercia* v. *United States*, 289 U. S. 466, 469. As such they have a duty of initiative to see that the issues are determined within the scope of the pleadings, not left to counsel's chosen argument. See *New York Central R. Co.* v. *Johnson*, 279 U. S. 310, 318. Just as a Federal judge may bring to his aid an auditor, without consent of the parties, to examine books and papers, hear testimony, clarify the issues, and submit a report, in order to "render possible an intelligent consideration of the case by court and jury," *Ex parte Peterson*, 253 U. S. 300, 306, and in so doing has the power to tax the expense as costs "necessary to the true understanding of the cause on both sides," *Whipple* v. *Cumberland Cotton Co.*, 3 Story 84, 86, he has the power to call and examine witnesses to elicit the truth. See *Glasser* v. *United States*, 315 U. S. 60, 82. He surely has the duty to do so before resorting to guesswork in establishing liability for fault.

Dudder's account of what happened surely could supplement Johnson's as a basis for recreating the events which led to Johnson's injury. Neither party saw fit to use his available testimony. Instead of entering judgment for the party who had the burden of proof and did not meet it, the trial judge should at least have called

Dudder as the court's witness. As Judge Sibley observed in a case where witnesses who knew what actually happened had not been called to testify: "We think the interests of justice would be served by a new and more orderly trial, which can easily be managed . . . . Williams and Batson [the witnesses] certainly know the truth of the things in dispute. If neither party will risk calling a witness who knows important facts, it is in the power of the court to call and examine such a witness, in the interest of truth and justice, allowing both parties the right of cross-examination and impeachment." *Chalmette Petroleum Corp.* v. *Chalmette Oil Distributing Co.,* 143 F. 2d 826, 828–9.

Three courts and thirteen judges have now passed on this case when in good reason a situation like this ought never to get into court at all. The crux of the difficulty is that an industrial injury such as the petitioner suffered is as to interstate railroad employees and seamen still determined by the archaic law of negligence instead of by a just system of workmen's compensation. Occurrences like the one now in controversy are inherent in industrial employment and to make liability depend on a finding of "negligence" is to pursue unreality. England abolished negligence as the basis of liability fifty years ago. The States, long laggards in making law conform to the actualities of industry, have now, with only a single exception, supplanted the outmoded liability for fault by a rational system of workmen's compensation laws, and Congress has enacted compensation laws for the District of Columbia, federal employees, and for longshoremen and harbor workers. "It is reasonable that the public should pay the whole cost of producing what it wants and a part of that cost is the pain and mutilation incident to production." Holmes, J., in *Arizona Employers' Liability Cases,* 250 U. S. 400, 433. But so long as Congress sees fit to have liability for injuries by railroad employees

and seamen based solely on proof of fault, it is not for this Court to torture and twist the law of negligence so as to make it in result a law not of liability for fault but a law of liability for injuries.

One cannot be unmindful that "the radiating potencies of a decision may go beyond the actual holding." *Hawks* v. *Hamill*, 288 U. S. 52, 58. Lower courts read the opinions of this Court with a not unnatural alertness to catch intimations beyond the precise *ratio decidendi*. A decision like this exerts an influence, however unwittingly, well calculated to lead lower court judges to avoid reversals by deciding compassionately for the plaintiff in these negligence cases confident that such decisions are not likely to be reviewed here.

I would have the cause remanded to the District Court for further proceedings in conformity with this opinion.

MR. JUSTICE JACKSON and MR. JUSTICE BURTON join in this dissent.