## PETRICICH v. DEVLAHOVICH.

### No. 9697PH.

United States District Court

S. D. California, Central Division.

Oct. 27, 1952.

David A. Fall, San Pedro, Cal., for libelant.

Lasher B. Gallagher, Los Angeles, Cal., for respondent.

YANKWICH, Chief Judge.

Libelant, Anton Petricich, has brought his libel for damages, maintenance and cure by reason of injuries received and disability incurred while in the employ of the Respondent as a fisherman seaman aboard the vessel "New Bol".

The maintenance and cure is asked for disability incurred in March, 1948, when he developed a hernia while working on the boat. The condition did not cause immediate disability. On March 11, 1948, he was hospitalized by the United States Health Service, who repaired the hernia. He was disabled for about 60 days. It is agreed that the rate of maintenance is $6 a day.

The claim for damages for injuries is based upon an injury to the eye which the Libelant suffered aboard the vessel on March 17, 1948. I am of the view that the hernia for which he was hospitalized on March 11, 1949, developed while fishing on the Respondent's vessel in March, 1948. He testified to feeling a sudden pain and noticing a swelling. The hernia did not cause him any particular trouble and, being anxious to continue fishing, he, on the recommendation of a druggist friend, used a truss until such time in March, 1949, when he was ready to be hospitalized for the condition.

The fact that the doctors at the United States Public Health Office who had given him constant treatments for the eye condition made no notation of his complaining of the hernia until September, has very little significance.

Most men, especially men accustomed to hard work, do not consider such condition as urgent, especially if it does not interfere with their work. Libelant explained that he delayed the matter until he was ready to be hospitalized, but that he did mention the condition to the members of the United States Health Staff before September. He claims he informed them that he was wearing a truss, and that they assured that this "would do" until he was ready to have the hernia repaired. On the basis of these facts, I indicated at the conclusion of the trial that I would give to the Libelant maintenance for the period of disability on this account. However, the entire matter was submitted to allow further consideration of the question whether the injury of the eye was compensable.

The Libelant was stowing fish in the hold of the vessel when he was hit in and about the eye by one of two boards which were being used as a slide for the fish. The operation was conducted by three men. A man standing in the boat close to the hatch was handing the fish to a second man standing in the hold who placed the fish on the two boards. The Libelant was at the end of the slide receiving the fish and stowing them in a bin.

This much of the evidence is certain. From here on, there is no clear picture given by the two men of the crew who helped the Libelant in the operation, as to what caused the accident. The man near the hatch, Frank Almeida, claimed that he handed the fish to the man in the hold, Frank Banicevich, in answer to his call for "fish" and that he did not release his grip of the fish until he was certain that the man below held it. The latter admits that he may have called for the "fish", as was the custom, but that instead of its being handed to him, it was thrown into the hold.

Almeida claims he was looking at Banicevich at the time. The latter says he did not see Almeida in the act of handing him the fish. On the contrary, it seemed to him that some one on deck had thrown it at him. Because of this, at the trial, I referred to the incident as that of "the flying dead fish". At first impression, it seemed hopeless to reconcile these two versions. But the physical facts make it clear that a fish weighing from sixty to eighty pounds must have been dropped suddenly on one of the boards with such force that it raised the end of the sec-

ond board which underlay it, and which hit the Libelant in the right eye, cutting it. Scarring and partial opacity have followed, which have continued to the present day, and have resulted in the loss of fifty per cent of the vision in the Libelant's right eye. This warrants the conclusion that the fish was dropped negligently with sufficient force to achieve the result. As to the scheme of causation, the only possible inference is that the man standing near the hatch released his hold on the fish before he made certain that the man below had grasped it firmly,—or that the man below, in a moment of inattention, failed to take the fish and it dropped with sufficient force to raise the board and cause it to strike the Libelant. The position of the Libelant, who was on his hands and knees, was such that he did not see what happened.

So we are confronted with the fact that, whether the doctrine of *res ipsa loquitur* applies, Johnson v. United States, 1948, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468, or not, the reasonable inference is that a large fish was dropped without warning by one of the employees of the Respondent under circumstances which warrant the conclusion that there was carelessness in handling it. This is negligence for which recovery lies. 46 U.S.C.A. § 688. However, the evidence is also clear that the Master of the boat had instructed his fishermen, repeatedly, to use a specially constructed chute built like an open trough to handle the fish in the hold. The Libelant testified that he and his assistant heard the warning, but that they used the boards instead, because they believed that the boards were easier to handle and the chute was too short. However, the Master testified that the chute was of proper length for use in any of the bins on the boat, and he gave its correct measurements to prove the fact. The Libelant did not personally put the boards into position, but he approved the arrangement. The use of the boards contributed to the accident. The use of the chute might have prevented it, or reduced the consequences. For these reasons we find that the Libelant was guilty of contributory negligence and have reduced the award by the appropriate amount.

See, Beadle v. Spencer, 1936, 298 U.S. 124, 128, 56 S.Ct. 712, 80 L.Ed. 1082; The Arizona v. Anelich, 1936, 298 U.S. 110, 118–119, 56 S.Ct. 707, 80 L.Ed. 1075; Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 428–429, 59 S.Ct. 262, 83 L.Ed. 265.

Judgment and decree will, therefore, be for the Libelant as follows:

Two Thousand and Five Hundred Dollars on his claims for injury to his right eye and $360 for maintenance,—being Six Dollars per day for a period of 60 days,—on his claim for disability, by reason of a hernia incurred while in the employ of the Respondent as a fisherman.

Costs to the Libelant.

Findings and decree to be prepared by the proctor for the Libelant under local Rule 7.