Joseph E. NUNES

v.

FARRELL LINES, Inc.

Civ. A. No. 52–157.

United States District Court,
D. Massachusetts.

Feb. 28, 1955.

Hyman Katz, Boston, Mass., for plaintiff.

Thomas H. Walsh, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action for maintenance and cure. The plaintiff was injured while his ship was in Africa. There is a dispute whether the important injury occurred on board ship, or whether he suffered it ashore as a result of being "beat up" while drunk. There is no evidence, however, that the occurrence was provoked and the defendant has not satisfied me that the injury was caused by such wilful misconduct as to bar recovery.

Thereafter the plaintiff was taken to a hospital in Africa where a trepanning operation was performed. This left a hole in his skull about an inch in diameter covered only by skin. He was then brought back to Boston where he became an in-patient and subsequently an out-patient at the Marine Hospital. He also suffered from depression and other mental difficulties presumably associated with his injury and subsequent operation.

While still under instructions to return to the Marine Hospital, the plaintiff, apparently under the advice of his attorney, consulted a private physician who subsequently took him to another hospital where he inserted a plate to cover the hole in his skull. The plaintiff was discharged from this operation on February 8, 1952. After the operation he continued to be mentally ill-adjusted, suffering from depression, insomnia, etc. He first worked part time in October, and full time in November, and has been working ever since.

The first question is whether the plaintiff is entitled to recover for the bills of his private physician and hospital, in the light of the fact that he left the Marine Hospital where he was receiving free treatment. There is no evidence that the Marine Hospital had either suggested or offered to place the plate in the plaintiff's skull. I find that it was reasonable and proper for him to want and to have such a plate. On the other hand I do not find that he asked the Marine Hospital

for such treatment, either while he was there, or after his private physician had advised it.

This presents a borderline case. If the plaintiff had been requested by the shipowner to go for particular treatment and had refused, and had gone to his private physician, he could not recover. The Bouker No. 2, 2 Cir., 241 F. 831, certiorari denied 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529; The Balsa, 3 Cir., 10 F.2d 408. On the other hand, this circuit has held, by a divided court, that he is under no duty to inform the shipowner, so as to give the shipowner opportunity to direct him to free care, and is under no duty "to volunteer to go to the Marine Hospital for treatment". Stevens v. R. O'Brien & Co., 1 Cir., 62 F.2d 632, 634.

If the Marine Hospital had directed, or even recommended, the operation I would hold that he cannot now recover. However, it appears from the records that the hospital's instructions were that he needed extensive rest. It discharged him as an in-patient and instructed him to report weekly as an out-patient. His failure to return was not a refusal to submit to the operation. It is a fair inference that the Marine Hospital did not intend to recommend the operation, in spite of the fact that the plaintiff continued to be unimproved without it. In other words, I do not feel he was guilty of "arbitrarily leaving the Marine Hospital". The Santa Barbara, D.C.E.D. N.Y., 255 F. 231, 232, affirmed on this point, 2 Cir., 263 F. 369. Cf. Bailey v. City of New York, 2 Cir., 153 F.2d 427, where the plaintiff "well knew, they [the X-rays] could have been taken free at the Marine Hospital."

This, however, does not necessarily mean that he should not have gone back and asked for the new treatment, in view of its expense. In Robinson v. Swayne & Hoyt, D.C.S.D.Cal., 33 F.Supp. 93, 94, the court said,

"The expenses of the cure are those actually incurred by him, provided he cannot obtain free treatment from the United States Public Health Service."

In Van Camp Sea Food Co. v. Nordyke, 9 Cir., 140 F.2d 902, certiorari denied 322 U.S. 760, 64 S.Ct. 1278, 88 L.Ed. 1587, the court said the test was whether he was "required" to go "elsewhere." See also Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 654, 82 L.Ed. 993, "courts * * * limit recovery to the expense of such maintenance and cure as is not at the disposal of the seaman through recourse to [the marine hospital]."

■ The question is, where is the burden of proof? Must the seaman inquire? Must he show the Marine Hospital does not have the facility? In the light of the majority opinion in Stevens v. R. O'Brien & Co., supra, I conclude, with some reluctance under the circumstances of this case, that the burden is on the shipowner and that it has not been maintained. See also McManus v. Marine Transport Lines, Inc., 2 Cir., 149 F.2d 969, certiorari denied 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467. This result may also be justified under the special considerations given to seamen shifting the burden of proof in release cases. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239.

Accordingly, I allow $1,005, being all the bills to June 1, 1952. I disallow charges for psychiatric treatment after that date running into 1954. I disallow interest, as it does not appear the bills have been paid.

■ The next question is maintenance. The defendant contends that in view of the fact that the plaintiff lived free with his mother, as I find, that he is not entitled to maintenance at all. It seems to me I am required to rule for the defendant on these facts. Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468.[1]

Were it not for this rule I would find damages for maintenance as follows. I do not believe that the plaintiff could go

1. As in the Johnson case, the plaintiff was an adult.

back to work as soon as he had been discharged from the hospital on February 8th. On the other hand I discount the fact that he did not work, or felt that he could not work, full time until November. His previous work history is not impressive. He had no dependents and he lived with his mother, who made no charge for board. I believe that whatever month he started work he would have found it difficult to work full time, and I think that he could have started just as well in the late spring as he could have in the fall. The maximum maintenance I would find is to June 8th, for which the defendant would be entitled to certain credits and adjustments, leaving a total of 132 days. This, at the agreed rate of $8 a day would come to $1,056. I do not, however, allow it.

Judgment for the plaintiff for $1,005 on count 3 of the complaint.