## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: October 24, 2016          Decided: October 5, 2017)

Docket No. 16-607

———————————————

MANHATTAN BY SAIL, INC., as Owners, Operators, and Agents of the Excursion sailing vessel, Shearwater Classic Schooner For Exoneration from or Limitation of Liability, SHEARWATER HOLDINGS, LTD., as Owners, Operators, and Agents of the Excursion sailing vessel, Shearwater Classic Schooner For Exoneration from or Limitation of Liability,

*Petitioners-Appellees,*

v.

Charis Tagle,

*Respondent-Appellant.*

———————————————

Before:

LEVAL, SACK, and RAGGI, *Circuit Judges*.

Passenger, claiming negligence as the cause of her injury during an excursion on a sailing vessel when a crewman lost hold of a weighted halyard which then swung free, striking passenger's head, appeals from the judgment of the United States District Court for the Southern District of New York (Valerie Caproni, J.) exonerating the vessel owner from liability after nonjury trial. The district court concluded that the passenger failed to adduce evidence that would sustain application of res ipsa loquitur to show negligence because she failed to show that the occurrence was of the sort that could occur *only* because of negligence. VACATED and REMANDED.

1

16-607
Manhattan by Sail, Inc., *et al.* v. Charis Tagle

DAVID R. HORNIG (GUERRIC S.D.L. RUSSELL, *on the brief*), Nicoletti Hornig & Sweeney, New York, NY, *for Petitioners-Appellees*.

JONATHAN R. RATCHIK, Kramer & Dunleavy, L.L.P., New York, NY, *for Respondent-Appellant*.

LEVAL, *Circuit Judge*:

Charis Tagle, who was injured while a passenger on the sailing vessel Shearwater Classic Schooner (the "Shearwater"), appeals from the judgment of the United States District Court for the Southern District of New York (Valerie Caproni, *J.*) entered after a nonjury trial, which exonerated the vessel owners, Manhattan by Sail, Inc. and Shearwater Holdings, Ltd., from liability for the injury. Tagle was injured when a deckhand unclipped a weighted halyard from the forestaysail at the bow of the vessel and lost hold of it, so that it swung free and struck her in the head. The shipowners offered no evidence explaining why he lost hold of it. The district court ruled that the passenger failed to show negligence or entitlement to application of the doctrine of res ipsa loquitur because a seaman's loss of control of a line *can* occur without negligence. This was error. The passenger made a showing of

negligence, which the shipowners failed to rebut. The judgment is vacated, and the matter remanded with directions to enter a finding of negligence.

**BACKGROUND**

1.      The Accident at Issue

On April 30, 2011, Charis Tagle purchased passage aboard the Shearwater, a sightseeing vessel which takes passengers on excursions in New York Harbor. Tagle boarded the ship, and a crewmember directed her to sit on a wooden hatch next to the forestaysail mast. The forestaysail mast is positioned between the main mast (near the center of the ship) and the bow.

The Shearwater cast off under engine power into the lower Hudson River. David Zimmerman, the captain, ordered the crew to raise the forestaysail. The forestaysail is raised by means of a halyard, which runs from the base of the forestaysail mast vertically up the mast to a wooden block (or pulley) near the top of the mast, through the block, and from there forward to the bow, where it is attached to a grommet at the top corner of the triangular forestaysail by means of a one-pound stainless steel clip, called a pelican clip. The sail is raised by pulling downward on the end of the halyard at the bottom of the mast, so that the other end of the halyard (the end attached to

the sail at the bow) pulls the top of the sail upward toward the pulley near the top of the mast. When the pelican clip at the forward end of the halyard is clipped to the sail, the forward part of the halyard is immobilized. On the other hand, if the clip is detached from the sail when the halyard is extended forward from the mast toward the bow, the halyard will be pulled by gravity toward the base of the mast from which it hangs and, unless held secure, will swing as a pendulum.

When Zimmerman ordered that the forestaysail be raised, Christopher Biggins, a deckhand, detached the halyard from the sail. In his testimony at trial, Biggins could not remember why he unclipped the halyard. Tugged by gravitational force toward the mast, the freed halyard pulled loose from Biggins's grip and swung back towards the mast where Tagle was seated. The clip at the end of the halyard struck Tagle and cut her forehead. Although Biggins knew immediately after losing control of the halyard that it had struck and injured a passenger, he testified at trial that he could not recall why he lost control of it. The captain testified that Biggins reported at the time that "while he was hooking up the halyard to the forestaysail, it slipped out of his hands and swung like a pendulum . . . ." A-63–64.

4

2.     The Instant Action

Tagle filed suit in New York state court, alleging that the negligence of

the crew caused her injury. The owners of the Shearwater then filed this

petition in admiralty seeking exoneration from liability, pursuant to the

Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* Tagle's state court lawsuit

was stayed pending resolution of the district court's action. The district court

conducted a bench trial on the question whether Tagle's injury resulted from

negligence.

In summation, Tagle contended she had established that the

Shearwater's crew breached their duty of care, and argued for application of

res ipsa loquitur. The court rejected her arguments. It reasoned that "sailors

do, even when exercising ordinary care, sometimes lose control of a line—

whether due to wind or an unexpected wave or wake." A-145 n.5. Because

this was not "the sort of accident that [can] occur *only* because of someone's

negligence," the court rejected the application of res ipsa loquitur, A-145

(emphasis added), and found that Tagle failed to prove negligence. The court

accordingly granted the owners exoneration from liability.

**DISCUSSION**

1. <u>Res Ipsa Loquitur</u>

On appeal, Tagle argues, *inter alia*, that the district court misapplied the doctrine of res ipsa loquitur. We agree. That phrase means, "The thing speaks for itself." The doctrine enables a plaintiff to prevail in a certain type of circumstance in proving negligence even though the plaintiff cannot show exactly who or what caused her injury. Under that doctrine, a fact-finder may infer negligence merely from the happening of the event that caused the harm if: (1) the event is of a type that ordinarily would not occur in the absence of negligence; (2) it is caused by an agency or instrumentality under the exclusive control of the party charged with negligence; and (3) it is not due to any voluntary action or contribution on the part of injured party. *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 55 (2d Cir. 1978) (per curiam); *Savard v. Marine Contracting Inc.*, 471 F.2d 536, 542–43 (2d Cir. 1972).

The district court at first correctly formulated the question as whether this was "the kind of event that does not *ordinarily* occur in the absence of someone's negligence?" A-144 (emphasis added). The court then answered that question in the negative, however, on the basis of an incorrect

reformulation of the test. The court found that nothing in the record contradicted the "common sense notion that a deckhand exercising due care *can* lose control of a line." A-145 (emphasis added). This was not, in the district court's view, "the sort of accident that could occur *only* because of someone's negligence." *Id.* (emphasis added).The court therefore rejected the application of the doctrine.

This was error. Res ipsa loquitur is not limited to accidents that could occur *only* because of negligence. For res ipsa loquitur to apply, a claimant must show that the event is of a type that *ordinarily* does not occur in the absence of negligence. An injured claimant is not required to "eliminate with certainty all other possible causes or inferences, which would mean that the plaintiff must prove a civil case beyond a reasonable doubt." W. Page Keeton, *et al.*, Prosser and Keeton on the Law of Torts § 39, at 248 (5th ed. 1984) (hereinafter Prosser & Keeton); *see also Johnson v. United States*, 333 U.S. 46, 49 (1948) ("No act need be explicable only in terms of negligence in order for the rule of res ipsa loquitur to be invoked.").

Tagle's evidence satisfied her burden of making a prima facie showing of entitlement to res ipsa loquitur. Moreover, the shipowners failed to rebut

her evidence. An extended halyard that is permitted to swing freely from the top of the mast represents an obvious danger, especially when it has a one pound clip attached to the swinging end. It is a seaman's job to keep such lines secure to prevent them from swinging dangerously. Roy Scott, Tagle's marine expert, testified that an unsecured halyard would "fall back to the base of the pendulum" (that being the base of the forestaysail mast where Tagle was seated), Docket No. 75, at 44, and "swing indiscriminately," *id.* at 47, risking "really bad things." A-34**.** The shipowners offered no evidence to rebut those propositions, and they are not debatable.[1] Scott added that "if for some reason [the halyard] did have to be detached" from the forestaysail, it was his opinion that the crew "should have done it without passengers on board." Docket No. 75, at 50. While no doubt things can happen at sea that could cause an extended halyard to slip out of a seaman's grasp without negligence, Tagle's evidence was sufficient to show that this does not *ordinarily* happen without negligence.

---

[1] This aspect of Scott's testimony was comparable (depending on a slightly different application of the law of gravity) to testimony that a workman on a scaffolding high above a street where pedestrians are walking risks causing serious injury if he allows a one pound weight to fall out of his hands and drop toward the street.

The sufficiency of Tagle's evidence is established by Supreme Court precedent in *Johnson v. United States*, 333 U.S. 46 (1948). In *Johnson*, the claimant was standing on the main deck of a ship, rounding in two blocks. Another sailor was standing on a deck above claimant, holding one of the blocks. *Id.* at 47. For some unknown reason, the block above the claimant was permitted to fall, and it struck the claimant on the head. *Id.* at 48. The Supreme Court held that res ipsa loquitur applied. The Court concluded that "[a] man who is careful does not ordinarily drop a block on a man working below him." *Id.* The Court recognized that "[s]ome external force might conceivably compel" the sailor to drop the block, but on the record presented, the sailor "alone remain[ed] implicated, since . . . either he or [the claimant] was the cause of the accident and it appears that [the claimant] was not responsible." *Id*.

The same is true here. A deckhand who *carefully* exercises the *skills* required for the seaman's job will not ordinarily lose hold of an extended weighted halyard—all the more so when passengers are seated in the halyard's swing-path. Waves and wind, and the consequent shifting and rolling of the deck, are the normal conditions of the sea, in which seamen

9

must work protecting the safety of passengers and crew. While it is no doubt true that sudden unexpected turbulence can be of such force that a seamen's loss of control of a line could be deemed non-negligent, there was no evidence in the record of any such abnormal circumstance that caused the halyard to slip from Biggins's grasp. As *Johnson* made clear, the mere possibility that "some external force"—here, perhaps an unusual wave or gust—"might conceivably compel" a seamen to let go of a dangerous halyard is not sufficient reason to reject the application of res ipsa loquitur if this would ordinarily not happen in the absence of negligence, and there was no evidence of any such unusual external force.

The district court reasoned that the facts of *Johnson* were "very different than those here." A-145 n.5. In the district court's view, the distinguishing factor was that, in *Johnson*, "[t]here was no evidence that blocks are regularly dropped due to the movement of the ocean," while in our case, there was testimony "that the risk from lines on a sailing vessel cannot be totally eliminated." *Id.* This reasoning fails. It essentially repeats the district court's misapplication of the res ipsa loquitur rule. The issue was not whether the risks resulting from a seamen's failure to hold onto a halyard could "be

10

totally eliminated" by the exercise of due care and skill. Rather, the question was whether such a harm does not *ordinarily* occur in the absence of due care and skill.

There was nothing in the record to suggest that Biggins's error was caused by some extra-ordinary force or turbulence to let the halyard slip out of his hands. While Tagle's expert described New York Harbor as an area of "an immense confusion of wakes, waves, boats, [and] vessels," A-28, there was no evidence of any turbulence on the particular day, much less at the particular time, that might have caused Biggins to lose control of the halyard, and Biggins made no such claim.

Relying on *Irwin v. United States*, 236 F.2d 774 (2d Cir. 1956), the shipowners argue that courts refuse to apply res ipsa loquitur to cases in which sea conditions can cause an accident. The argument does not describe *Irwin* correctly. The claimant, Irwin, was in a lifeboat being lowered from a ship when a "freak swell" of the sea hit the lifeboat, causing him to be tossed violently from one side of the boat to the other. *Irwin v. United States*, 111 F. Supp. 912, 915 (E.D.N.Y. 1953). In rejecting Irwin's claim to res ipsa loquitur, this court reasoned that, because the accident was shown to have been

"caused by an unpredictable 'freak swell' of the sea," the defendant did "not have control of the agency causing the accident." *Irwin*, 236 F.2d at 776. There was no comparable evidence here. Not only did the shipowners fail to offer evidence that Biggins's loss of control was attributable to any abnormal lurch; they did not even offer evidence of the general presence at the same time of extra-ordinary turbulence. Their position depended on sheer speculation. Had there been evidence in this case that a freak wave had caused Biggins to lose his balance and drop the halyard, *Johnson* might arguably be distinguishable, and *Irwin* might control. But there was no such evidence here.

Nor was this a circumstance where it would be arguably unreasonable to impose on the defendant the obligation to put forth evidence of an asserted non-negligent cause of the accident, such as might arise if the ship's crew had been unaware of the claimant's injury at the time, and thus had no reason to focus on, or remember, the conditions. Here, it was instantly known by Biggins and the captain that, when Biggins lost control of the halyard, it struck Tagle in the head and caused an injury. The captain immediately made a log entry noting the event. If some external force outside of the ordinary

had caused Biggins to let go of the halyard, Biggins and the captain had every reason to note, record, and remember it. But Biggins testified that he did not know why he lost control of the halyard. He did not identify any non-ordinary condition to explain the mishap. The ship's log reflects no explanation for Biggins's losing control of the halyard, and the captain testified that Biggins had acknowledged that the line "*slipped out of his hands*." A-63–64.  The absence of any evidence of unusual circumstances powerfully supports the proposition that there were none and that Biggins's loss of control of the line was due to his negligence and nothing else. Tagle's evidence was thus sufficient to support the application of res ipsa loquitur.

2.    Negligence

Tagle's evidence was, furthermore, sufficient to prove negligence regardless of whether the res ipsa loquitur doctrine applied.[2] We recognize that the doctrine permits, but does not require, a fact-finder to draw an

---

[2] If our judgment were based solely on the district court's incorrect application of the res ipsa doctrine, we would have directed the district court to reconsider whether Biggs was negligent, giving Tagle the benefit of res ipsa loquitur. Because our judgment is that Tagle has proved negligence regardless of the applicability of res ipsa loquitur, we have reached a different judgment—that the district court must rule in favor of Tagle as to Biggins's negligence as the cause of her injury. Accordingly, our discussion of the standards for res ipsa loquitur is dictum and not a holding of this case.

inference of negligence. *Johnson*, 333 U.S. at 48 (citing *Sweeney v. Erving*, 228 U.S. 233, 240 (1913)). Res ipsa loquitur is most commonly applied in circumstances where, unlike this case, it is not known exactly who or what caused the accident. *See Kambat v. St. Francis Hosp.*, 678 N.E.2d 456, 458 (N.Y. 1997) ("Where the actual or specific cause of an accident is unknown, under the doctrine of res ipsa loquitur a jury may in certain circumstances infer negligence merely from the happening of an event and the defendant's relation to it." (citations omitted)). Here, it was established beyond doubt that the accident was caused by Biggins's loss of control of the halyard. The only question was whether his failure should be deemed negligent.

To prevail on this claim of negligence, Tagle was required to prove, by a preponderance of the evidence, that (1) the ship's crew owed her a duty of care, (2) that duty was breached, and (3) the breach proximately caused her injuries. *Pasternack v. Lab. Corp. of America Holdings*, 807 F.3d 14, 19 (2d Cir. 2015); *see also Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005) ("The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law.").

Tagle's evidence established these three elements, and the shipowners offered no evidence to place any of them in doubt. As to duty, it was established without doubt or contradictory evidence that an extended, weighted halyard slipping out of a seaman's grasp would represent a danger to a passenger seated at the base of the mast. To avoid such danger, a "seaman must act with the care, skill, and ability expected of a reasonable seaman in like circumstances." *Gaylor v. Canal Barge Co., Inc.*, No. 14-2398, 2015 WL 5321756, at *2 (E.D. La. 2015) (citing *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997) (en banc)); *see Barlow v. Liberty Mar. Corp.*, 746 F.3d 518, 527 n.15 (2d Cir. 2014) (observing that a seaman is charged with the duty to act with the care and skill required of a "reasonably prudent *seaman*, not that of a reasonably prudent *person*" (emphasis in original)). Those who are held out as competent to perform duties requiring training and skills must possess those skills and employ them in their actions. *See* 3 Lindahl, *Modern Tort Law: Liability and Litigation* § 26:122 (2d ed. 2017); Prosser & Keeton § 32, at 185 ("[Those] who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability."). A seaman

who has detached a halyard that is stretched forward from the mast to the bow of the ship is required to exercise the care and skill necessary to prevent it from pulling loose.

That Biggins breached his duty is evident from his contemporaneous description of the mishap as having occurred because "the line slipped out of his hands." A-63–64. The circumstantial evidence overwhelmingly supported the conclusion that Biggins's failure to keep control of the halyard was attributable to nothing other than his failure to use due care and skill. The possibility of causes other than negligence was supported by nothing other than conjecture. Because the shipowners had no evidence supporting an inference of any cause other than negligence, no issue of material fact that might contradict or undermine the inference of negligence was presented to the fact-finder. In similar circumstances we reversed the trial judge's findings that two vessels were not responsible for a collision. *See Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 62 (2d Cir. 2007) (reversing district court's findings, after a bench trial, that only one ship was responsible for an accident, and instead "conclud[ing] all three vessels committed violations of [regulations] that caused the collision").

In the absence of evidence of any cause, other than negligence, to explain why Biggins let the halyard slip dangerously out of his grasp, the only inference having a basis in the evidence was that Biggins failed to use the care and skill required of the seaman to avoid an obvious danger to a passenger.

We recognize that Biggins testified that he "didn't intentionally drop" the halyard, that his practice is to handle lines "as carefully as possible," and that this is what he was doing "immediately prior to the incident." A-78. That he did not act intentionally in no way rebutted the inference that he acted negligently. There was no evidence whatsoever to support the suggestion that a careful, competent seaman would have lost hold of a weighted halyard, absent some extra-ordinary cause, and, as we have repeatedly said, there was no evidence of any such extra-ordinary cause. And as we have already noted, the evidence included no reason to doubt that, had there been a cause other than negligence for Biggins's loss of control, Biggins would have reported it. One who drives a car onto the sidewalk injuring pedestrians does not successfully contradict the logical inference of lack of due care or due skill merely by asserting that he was driving carefully.

We recognize that it is unusual for an appellate court to direct a verdict of negligence. What is unusual in this case, however, is the absence of any evidence by the person who caused the accident of a justifying cause in circumstances where he would have had to have been aware of any such cause at the time of the injury. It is no doubt a tribute to Biggins's honestly that he did not fabricate a justifying cause for his loss of control of the halyard. Nonetheless, without evidence of a justifying cause, the only inference reasonably supported by the evidence is of negligence.

In short, the evidence adduced at trial gives no reasonable support to any other conclusion than that Biggins, in a circumstance that posed an obvious danger to Tagle, failed to exercise the combination of skill and care that is required of a seaman, and that his failure was the cause of Tagle's injury.

**CONCLUSION**

For the reasons stated above, the district court's judgment is VACATED, and the case is REMANDED with instructions that the court enter a finding of negligence as the cause of Tagle's injury.[3]

---

[3] Under the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*, "[w]hether a vessel owner is entitled to limit its liability requires a two-step analysis." *Otal Invests. Ltd. v. M/V CLARY*, 673 F.3d 108, 115 (2d Cir. 2012). First, the court must determine whether acts of negligence caused the accident which caused plaintiff's injuries. *Id.* "Second, the court must determine whether the ship owner had knowledge or privity of those same acts of negligence." *Id.* (internal quotation marks and alterations omitted). The district court concluded that the shipowners were not negligent, and dismissed on that ground. The court therefore did not rule on the issue of privity. As we conclude that negligence was established, the case is remanded for a determination on the issue of privity.