**Daniel J. DONOVAN, Plaintiff,**

v.

**ESSO SHIPPING COMPANY, Defendant.**

**Civ. A. 839–55.**

United States District Court
D. New Jersey.

May 29, 1957.

had been employed on this and other similar vessels owned by the defendant for a period of almost four years. His injuries resulted from contact with a boom with which he was struck when it fell as a proximate result of *his* loosening and removing from a cleat some of the turns of the topping lift which supported it and to which the topping lift had been fastened while the boom had been used by representatives of an independent contractor in hoisting certain articles of heavy machinery aboard the vessel. Because of the absence of any evidence tending to show negligence or unseaworthiness on the part of defendant or its vessel proximately causal of the plaintiff's injuries, the cause of action under the Jones Act was dismissed at the close of the plaintiff's case on liability.

Over the objection of the plaintiff the Court thereupon discharged the jury and, sitting in Admiralty, received the evidence on the cause of action for maintenance and cure.

There is no doubt that plaintiff suffered severe injuries, which have resulted in substantial and permanent disability. Although plaintiff is precluded from performance of the duties of a seaman, there was medical evidence that he is capable of participating in gainful employment not involving physical exertion imposing strain upon the lower back, right hip and right lower extremity. Despite absence of any specific evidence of direct or indirect trauma to the plaintiff's head, a neuropsychiatrist who examined him just a year after the accident testified that, in addition to the concededly neurological orthopedic disability and the neurological changes manifested in the right lower extremity, he found symptoms which he interpreted in the aggregate as indicative of a post-concussion syndrome.

At the time of trial plaintiff still required the assistance of a cane in walking, and was wearing a brace on his right lower leg. Since the accident he has made several attempts to resume employment, but because of difficulty with his right leg he was unable to continue at any one job for more than five months.

Francis M. McInerney, Jersey City, N. J., for plaintiff.

Stryker, Tams & Horner, Newark, N. J., by Walter X. Connor, New York City, for defendant.

### WORTENDYKE, District Judge.

This is an action brought by a seaman under the Jones Act (46 U.S.C.A. § 688) to recover damages for personal injuries sustained by the plaintiff on February 5, 1954, in the service of the defendant's vessel, Esso Binghamton, on navigable waters within the jurisdiction of this Court. Under a separate count in the same action plaintiff seeks from the defendant owner expenses for maintenance and cure under the principles of Admiralty.

At the time of the accident plaintiff was 21 years of age and an ordinary seaman on board defendant's vessel. He

Immediately after the accident, on February 5, 1954, plaintiff was hospitalized in Bayonne (New Jersey) Hospital and placed under the care of Dr. Francis Boyle. Hospitalization terminated on May 19, 1954, after which the plaintiff continued to receive office treatments from Dr. Boyle which extended over a year, at least twice weekly, until August 11, 1955, when Dr. Boyle discharged the plaintiff as having reached maximum cure. In December, 1956, the plaintiff was again hospitalized, this time for about eight days, for palliative treatment of a neuritis of the right leg, which was deemed to be a sequel of his original injuries. Since his latest release from the hospital he has resumed reception of periodic office treatments from Dr. Boyle. These treatments have continued up to and including the time of trial, and have been and will continue to be rendered gratuitously.

Plaintiff concedes that defendant has expended for his benefit in excess of $11,922 by way of maintenance and cure since the date of the accident. That total may be broken down as follows: $2,732.41 for the initial hospitalization through May 19, 1954; $1,609 for doctors' services up to the date when plaintiff was discharged as having reached maximum cure; $4,060 for nursing services; $1,271 to the plaintiff's mother in consideration of her attendance upon him at home after his return from the hospital; and $2,250 in cash payments to the plaintiff.

A seaman injured in the service of a vessel is entitled to care and maintenance at her expense. The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The Mars, 3 Cir., 1907, 149 F. 729. The ship-owner's obligation to render medical assistance and treatment continues "for a reasonable time," not limited by the duration of the voyage, but does not extend beyond the " 'expense of effecting a cure by ordinary medical means,' " and does not include " 'extraordinary medical treatment or treatment after cure effected as completely as possible in a particular case.' "

The Bouker No. 2, 2 Cir., 1917, 241 F. 831, 835 (quoting from The C. S. Holmes, D.C., 209 F. 970). More recently (1948) the Supreme Court of the United States in Farrell v. United States, 336 U.S. 511, at page 519, 69 S.Ct. 707, at page 711, 93 L.Ed. 850, has indicated that the right of a seaman to maintenance and cure "does not hold a ship to permanent liability for a pension, neither does it give a lump-sum payment to offset disability based on some conception of expectancy of life." The Court in Farrell limited the liability for maintenance and cure to the time when the maximum cure possible has been effected. That decision expressly disclaimed any intention to overrule Calmar Steamship Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, which sets forth the present criterion in these cases. "The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained." Calmar Case, 303 U.S. at page 531, 58 S.Ct. at page 655.

Plaintiff, of course, had the burden of sustaining his claim for maintenance and cure by the evidence offered in support thereof. The San Antonio, D.C.Pa.1931, 1 F.Supp. 221, affirmed 3 Cir., 61 F.2d 623. Appraising the evidence in a light most favorable to plaintiff's contentions, we are impelled to the conclusion that when his attending orthopedic surgeon, Dr. Boyle, discharged him from treatment on August 11, 1955, maximum improvement of the disability resulting from the injuries which he had sustained in the service of defendant's vessel had then been achieved. Although the second hospitalization in December 1956 involved an expense in the amount of $147.90, that treatment was for the relief of a pressure neuritis secondary to an old injury, and moreover, the evidence fails to show whether or not the cost of that second hospitalization was

reimbursed by the defendant as part of the maintenance and cure payments which defendant concededly and voluntarily made. There is a similar absence of evidence tending to show that the expense of the foot braces which plaintiff was compelled to wear as a result of the injuries which he sustained in the service of the vessel was not included in the voluntary payments by the defendant to the plaintiff or for his account.

After he had completed his testimony on plaintiff's principal claim for indemnity, Dr. Boyle was recalled by the plaintiff in support of the claim for maintenance and cure. He testified that he had been paid for all of his services to the plaintiff to March 2, 1955 and that all subsequent services which he had rendered and was continuing to render were being furnished without charge to the plaintiff. The doctor explained that all treatments given to the plaintiff since he was discharged on August 11, 1955 were for the purpose of reducing disabling pain and that the extent of future treatments of similar character and for a similar purpose was not susceptible of definite prediction.

Dr. Raymond P. Reilly, who examined plaintiff on two occasions (December 20, 1954 and March 17, 1955) expressed the opinion that continued physiotherapy might be helpful in the treatment of circulatory obstruction, and that such treatment might be necessary for a period of a few years in the future in order to achieve a possible improvement.

Based upon his neuropsychiatric examination made of the plaintiff on May 4, 1957, Dr. Rubin A. Gerber expressed the opinion that he found the plaintiff in what the doctor characterized as a "post-concussional state" superimposed upon the admittedly permanent defects of the orthopedic injuries which the plaintiff had sustained. He expressed the opinion that the plaintiff would require considerable further treatment but was unable to determine the nature, frequency or duration of such treatment without first having what he described as the benefit of "medical, neurological, neuropsychiatric

and neurosurgical work-ups." In addition to treatment for the orthopedic disability this doctor expressed the view that the plaintiff would require future psychiatric treatments; estimating all future treatments to extend for a period of approximately two years and to involve "at Workmens Compensation rates" a probable cost of from $1,000 to $2,500 for the orthopedic treatments and $300 for the psychiatric treatments.

■ Disregarding the testimony of defendant's expert, Dr. George H. Hyslop, who was of the opinion that further treatment was contra-indicated, I find the evidence insufficient to support findings of fact (1) that defendant has not discharged its obligation to plaintiff to provide the means of cure of the injuries sustained by plaintiff in the occurrence complained of in this action; or (2) that further treatment will be likely to effect a diminution of the permanent disability from which plaintiff suffered on August 11, 1955 in consequence of his injury; or (3) that, if further treatment would probably be effective to work an improvement in plaintiff's condition, such treatment would be of any particular kind in any particular field or be of such probable frequency and extend over such an aggregate period of time and involve such probable cost as would justify an award at this time in any specific amount to provide for such future treatment. In sum, therefore, I find no evidence which might support a determination that the defendant has not fully discharged its obligation to the plaintiff to furnish maintenance and cure on account of the injuries which the plaintiff sustained on February 5, 1954 in the service of the defendant's vessel.

■■ There is another factor which would preclude any future award to the plaintiff for maintenance and cure. I refer to the plaintiff's failure to avail himself of the facilities of the New Jersey Rehabilitation Commission for his restoration to the status of an employable. As was pointed out in the Calmar case, supra, and reiterated in Wilson v. United States, 2 Cir., 1956, 229 F.2d 277,

 

a seaman injured in the service of his vessel is required to mitigate his damages by availing himself of all existing facilities for his rehabilitation. In Johnson v. United States, 1947, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468, the seaman's refusal to avail himself of the gratuitous facilities of various Government hospitals recommended by the doctors of the United States Public Health Service who treated him, led to the affirmance of the decision of the Ninth Circuit Court of Appeals that the seaman had forfeited his right to maintenance and cure.

The factual situation with which the Court was confronted on defendant's motion to dismiss the second count of the complaint is strongly suggestive of that presented to the Second Circuit Court of Appeals in 1954 in Desmond v. United States, 217 F.2d 948, 949, and the language of Judge Frank in that case seems peculiarly apposite here:

> "And when meaningful hopes for recovery end, the shipowner's liability ends. [Citing the Calmar case.] No different answer is suggested by testimony of the libelant's medical witness that further treatments are indicated. The treatments to which he refers are for a period subsequent to the date of trial and not for the period for which maintenance and cure have been allowed. But even assuming that these treatments would have been appropriate during the period in question, it does not follow that the respondent would be liable for their cost. For the physician indicated that the purpose of the treatments were [sic] not primarily to cure the patient, but to 'carry him along,' to relieve him, and to 'make him more comfortable'."

In 1955 Chief Judge Clark of the same Circuit, in Buch v. United States, 220 F.2d 165, 166, reversed the District Court's award of maintenance and cure to an injured seaman by reason of "a lack of definite evidence to support the award" because libellant's expert had expressed doubt whether his suggested fu-

ture rehabilitation program would effect any improvement in the patient's condition and because the patient had shown no inclination to the date of the trial to undertake the program.

There has been no evidence in this case as to future maintenance and cure which would fulfill the requirements of certainty and immediacy set forth in the Calmar case, supra.

■ Since the trial of the case, the Court has come to believe that the plaintiff was entitled to a jury trial with respect to his claim for maintenance and cure as well as his claim under the Jones Act. See Rey v. Colonial Navigation Co., 2 Cir., 1941, 116 F.2d 580; Moyle v. National Petroleum Transport Corp., 2 Cir., 1945, 150 F.2d 840. However, since there is no jury question presented by the evidence, to have retained the jury would not have affected the outcome. Since the evidence does not support a recovery for the plaintiff, the defendant's motion for judgment should prevail.

An order may be submitted in accordance with the opinions herein expressed.