Harry DIDDLEBOCK, Administrator o
the Estate of George M. Diddle-
bock, Deceased,

v.

ALCOA STEAMSHIP COMPANY, Inc.

No. 197 of 1961.

United States District Court
E. D. Pennsylvania.

Sept. 29, 1964.

Paul M. Goldstein, Philadelphia, Pa., for libellant.

James F. Young, of Krusen, Evans & Byrne, Philadelphia, Pa., for respondent.

BODY, District Judge.

This is a libel in admiralty filed by a merchant seaman, George M. Diddlebock, to recover maintenance and cure from his shipowner-employer, Alcoa Steamship Company, Inc. After the filing of the suit the libellant died on February 2, 1963 from causes not related to the subject matter of this litigation. His brother, Harry Diddlebock, was named administrator of libellant's estate by the Register of Wills of Philadelphia County on June 19, 1963. On July 1, 1963 by order of Court, the administrator was substituted as libellant in place of his deceased brother. In the course of this opinion all references to libellant will be of the deceased seaman, George M. Diddlebock.

Libellant, a seaman in the United States Merchant Marine for approximately seven years, joined the respondent's ship SS. ALCOA PURITAN on December 25, 1959 under foreign shipping articles as a saloon messman. His base monthly wages were $284.52 excluding overtime. Libellant's living quarters were amidship and he shared a room with two other members of the steward's department, one of whom was Protasio Herrera. Their shower room was also located amidship, and was used by all members of the steward's department consisting of at least eight men.

The deposition of the libellant was not taken before his death. The first witness to testify for the libellant was Protasio Herrera. His testimony, by deposition, consisted of statements that the general condition of the showers assigned to the steward's department were dirty, and only occasionally was there a smell of disinfectant in the shower. He further testified that about two weeks following the commencement of the voyage he noticed that Diddlebock started to break out in sores between his toes, around his ankles, and on the bottom of his feet, and that an odor emanated from these eruptions. Herrera stated that libellant suffered from this condition during the remainder of the voyage, and self-treated the same by applying an ointment to the inflamed areas. On cross-examination he testified that the libellant continued with his duties but by the end of the day his feet were "killing" him.

On March 10, 1960 libellant left the vessel at New Orleans upon conclusion of the foreign articles. Libellant neither requested treatment from the officers of the vessel for his alleged condition during his employment, nor did he seek medical care and attention at any hospital, or from any physician upon his departure from the vessel. The medical log of the SS. ALCOA PURITAN, which shows a complete record of all medical attention given to the crew, evidences not a single entry for the libellant during his employment upon the vessel.

Mrs. Eleanor Sims, libellant's first cousin, testified that she lived at libellant's house in Philadelphia; that when libellant arrived from New Orleans by plane she observed that his feet were all inflamed and swollen; that she assisted libellant in self-treatment of this condition by bathing his feet in hot water six to eight times a day; that libellant stayed in bed because of the condition of his feet; that his legs eventually became swollen and the scalp area became affected; and that due to the general nature of this condition, libellant did not

return to sea nor did any kind of work at any time thereafter.

Harry Diddlebock, brother of the libellant, testified and corroborated the statements made by Mrs. Sims. He further testified that he observed his brother's feet prior to December 25, 1959 and that he never saw any sores or other lesions on them.

The only medical treatment received by libellant was from Dr. Benjamin R. Katz on January 7, 1961, which was approximately one year after the onset of the alleged condition. Dr. Katz testified that he saw the decedent at his home and that he obtained a history from him as to the condition of the feet. Dr. Katz stated that the patient was lying in bed, and that there was a dryness of the skin with swelling and that a slight gangrenous condition was prevalent. This condition existed over both of the legs, including the feet, and libellant was unable to go to work at this time. Dr. Katz prescribed soaking and antibiotics, and stated that this condition could have been consistent with an onset in 1959. The libellant was advised at this time that his condition should be treated by a dermatologist. Dr. Katz further testified that there are many types of dermatitis and that he really could not state the cause. He knew that it was a condition common among men, and that the condition could lie dormant for years.

Respondent's evidence consisted of the testimony of George Hamm, captain of the SS. ALCOA PURITAN, and the testimony of Dr. Benjamin A. Gross, a dermatologist. The captain stated that the libellant never reported his condition to the medical officer, nor requested any medical treatment. He further stated that the showers were inspected twice a week; that they were clean and clear; that the floors were tiled; that the shower area was cleared and washed daily; and that he never received any complaints as to the showers. The testimony of Dr. Gross consisted chiefly of his expert opinion that no one could make a diagnosis of libellant's condition without complete laboratory studies; and that it would be extremely difficult to say whether germs or fungi were on the shower room floor unless scrapings from the floor were examined under a microscope.

On January 26, 1961 and on March 30, 1961 the respondent received notice of libellant's condition by letters from libellant's proctor advising it of his representation of the libellant, the alleged physical condition of the libellant, and demanding payment of maintenance and cure. Respondent replied to these letters on January 27, 1961 and April 4, 1961, respectively, requesting information and medical substantiation for the alleged disability, to which letters there was no reply.

The issue to be determined by this Court is whether the libellant is entitled to maintenance and cure in view of the aforestated facts and, if in the affirmative, the period for which such compensation should be awarded. As a merchant seaman the libellant was entitled to free care and hospitalization at any United States Public Health Service facility following his departure from the SS ALCOA PURITAN. 42 C.F.R. 32.6 et seq. As stated before, the medical log shows that the libellant did not seek treatment while aboard the ship. Upon his departure from the ship libellant did not request a Master's Certificate from the vessel's captain to receive treatment or gain admittance to a United States Public Health Service facility. Nevertheless, it is not necessary that a seaman possess a Master's Certificate to obtain admission to a United States Public Health Service Hospital. Admission may be obtained by the seaman filing an application stating the facts of his last employment, including the name of the vessel and the date of his service. It is alleged in his claim that when libellant arrived in Philadelphia, after the completion of his voyage, his feet and legs were in an inflamed condition. However, libellant did not attempt to obtain treatment while in Philadelphia from the United States Public Health Service Hospital which is located at 225 Chestnut Street in Philadelphia. Libellant was a

seaman with seven years experience, and it certainly must have been known to him that health services were available. Testimony also revealed that the libellant's brother was a retired seaman with thirty years experience, and that on several occasions he visited his brother and found him so incapacitated that he was unable to walk. On these occasions, libellant's brother testified, he would aid libellant into his automobile and take him for a ride. It is difficult for me to comprehend that libellant, on these occasions, did not make one effort to visit the United States Public Health Service Hospital located on Chestnut Street, Philadelphia.

" * * * The fact that United States Public Health Service Hospitals throughout the country are open to seamen for medical treatment is so well known among them that it should preclude the argument that seafarers may be ignorant of their right to free hospitalization and medical care."

Norris, Law of Seamen (2d Ed. 1962) § 594, p. 685.

 Equity is not a stranger in Admiralty and the Admiralty Courts may grant or deny any equitable relief depending upon the merits of the relief sought. Maintenance and cure was designed to provide a seaman with the necessary food and lodging when he became sick or injured aboard ship, or in the service of the ship, and it extended to the period until the seaman reached the maximum medical recovery. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. The Admiralty Courts have been liberal in interpreting this duty to insure the protection of seamen and have resolved any ambiguity or doubt in favor of the seaman. Aguilar v. Standard Oil Co., 318 U.S. 724, 735, 63 S.Ct. 930, 87 L.Ed. 1107.

 The duty of maintenance and cure is an affirmative one. This duty on the part of the master to care for seamen is one of the oldest and most conspicuous in the law of affirmative obligations. However, the authorities are in agreement that, except in cases involving grave and severe operations, a seaman must follow the expert recommendation of a physician or be precluded from recovering damages which might be avoided thereby. Murphy v. American Barge Line Co., 169 F.2d 61 (3 Cir. 1948). Only wilful misbehavior or a deliberate act of indiscretion will be sufficient to deprive a seaman of his maintenance and cure. However, the conception of contributory negligence, the fellow-servant doctrine, and the assumption of risk have no place in liability or a defense against maintenance and cure. Farrell v. United States, 336 U.S. 511, 516, 69 S.Ct. 707, 93 L. Ed. 850.

 In the course of seeking medical attention, a seaman has a duty to keep the cost of his maintenance and cure at a minimum. Wiseman v. Sinclair Refining Company, 290 F.2d 818 (2 Cir. 1961). Libellant here has demonstrated his failure to seek any medical cure or attention. A seaman's failure to act with reasonable diligence and seek medical aid to find out what is really the matter with him after an injury, may bar him from obtaining or procuring maintenance and cure. Bowers v. Seas Shipping Co., Inc., 185 F.2d 352 (4 Cir. 1950).

It is to be noted that libellant did not seek medical treatment until ten months after he was ashore. Even after seeing a physician who recommended that libellant should seek further treatment from a dermatologist, he failed to seek such treatment. Respondent herein was not callous in its attitude toward libellant. As soon as it received notification from libellant's proctor, respondent replied to both letters requesting proof of the claims. Thus, it was not the result of any recalcitrance or wilful or persistent default on the part of the respondent that persisted in the libellant's lack of medical treatment. Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88.

This Court had the full opportunity to observe the entire trial, and to observe the competency and frankness of all the witnesses involved therein, and to apprise

their demeanor. This Court is not convinced that the evidence presented before it could sustain a finding that the libellant should be entitled to maintenance and cure. It was inconceivable to this Court that the libellant could have been bedfast for ten months without having sought medical treatment while having had available to him the competent advice of his brother, a seaman of thirty years experience, and a brother who drove the libellant on many little pleasure trips without ever having taken him to the United States Public Health Service Hospital. Thus, libellant was not without means to be transported to the health center. Murphy v. American Barge Line Co., supra.

█ To my way of thinking, the libellant has failed to prove his allegations to support his claim for maintenance and cure.

### ORDER

And now, this twenty-ninth day of September, 1964, it is ordered that the request for payment of maintenance and cure for George M. Diddlebock, deceased, by his Administrator, Harry Diddlebock, be and the same is hereby denied.