**Harry H. DIDDLEBOCK, Administrator of the Estate of George M. Diddlebock, Deceased**

v.

**ALCOA STEAMSHIP COMPANY, Inc.**

Civ. A. No. 30067.

United States District Court
E. D. Pennsylvania.

Dec. 28, 1964.

worthiness under general maritime law. The administrator elected to maintain the latter actions at law with a right of trial by jury. Upon the conclusion of the defendant's case, the Court directed the jury to render a verdict in favor of the defendant, and judgment was entered thereon. After dismissal of the jury, the admiralty action was continued and the Court rendered an opinion and order denying maintenance and cure to the libellant. Diddlebock v. Alcoa Steamship Company, D.C., 234 F.Supp. 811 (1964).

The matter before the Court is plaintiff's motion for a new trial in reference to the rendering of the directed verdict in the civil action. In the course of this opinion all references to the plaintiff will be of the deceased seaman, George M. Diddlebock. Some of the facts as stated in the admiralty action will be repeated for the purpose of emphasis and in an effort to afford a complete understanding of the entire case.

Plaintiff, a seaman in the United States Merchant Marine for approximately seven years, joined defendant's SS ALCOA PURITAN on December 25, 1959 under foreign shipping articles as a saloon messman. His base monthly wages were $284.52 excluding overtime. Plaintiff's living quarters were amidship and he shared a room with two other members of the steward's department, one of whom was Protasio Herrera. Their shower room was also located amidship, and was used by all members of the steward's department consisting of at least eight men.

The deposition of the plaintiff was not taken before his death. The causes of death are not related to the subject matter of this action. The first witness to testify for the plantiff was Protasio Herrera. His testimony, by deposition, consisted of statements that the general condition of the showers assigned to the steward's department was dirty, and only occasionally was there a smell of disinfectant in the shower room. He further testified that about two weeks following the commencement of the voyage he noticed that Diddlebock started to break

Paul M. Goldstein, Philadelphia, Pa., for plaintiff.

James F. Young and Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

BODY, District Judge.

Harry H. Diddlebock, Administrator of the Estate of George M. Diddlebock, Deceased, filed a libel in admiralty to recover maintenance and cure from the shipowner-employer, Alcoa Steamship Company, Inc.; and also filed a complaint seeking recovery for negligence under the Jones Act and recovery for unsea-

out in sores between his toes, around his ankles, and on the bottom of his feet, and that an odor emanated from these eruptions. Herrera stated that plaintiff suffered from this condition during the remainder of the voyage, and self-treated the same by applying an ointment to the inflamed areas. On cross-examination he testified that the plaintiff continued with his duties but by the end of the day his feet were "killing" him.

On March 10, 1960 plaintiff left the vessel at New Orleans upon conclusion of the foreign articles. Plaintiff neither requested treatment from the officers of the vessel for his alleged condition during his employment, nor did he seek medical care and attention at any hospital, or from any physician upon his departure from the vessel. The medical log of the SS ALCOA PURITAN, which shows a complete record of all medical attention given to the crew, evidenced not a single entry for the plaintiff during his employment on the vessel.

Mrs. Eleanor Sims, plaintiff's first cousin, testified that she lived at plaintiff's house in Philadelphia; that when plaintiff arrived from New Orleans by plane she observed that his feet were all inflamed and swollen; that she assisted plaintiff in self-treatment of this condition by bathing his feet in hot water six to eight times a day; that plaintiff stayed in bed because of the condition of his feet; that his legs eventually became swollen and the scalp area became affected; and that due to the general nature of this condition, plaintiff did not return to sea, nor did any kind of work at any time thereafter.

Harry Diddlebock, brother of the plaintiff, testified and corroborated the statements made by Mrs. Sims. He further testified that he observed his brother's feet prior to December 25, 1959 and that he never saw any sores or other lesions on them.

The only medical treatment received by plaintiff was from Dr. Benjamin R. Katz on January 7, 1961, which was approximately one year after the onset of the alleged condition. Dr. Katz testified that he saw the plaintiff at his home and that he obtained a history from him as to the condition of his feet. Dr. Katz stated that the patient was lying in bed, and that there was a dryness of the skin with swelling, and that a slight gangrenous condition was prevalent. This condition existed over both of the legs, including the feet, and plaintiff was unable to go to work at this time. Dr. Katz prescribed soaking and antibiotics, and stated that this condition could have been consistent with an onset in 1959. The plaintiff was advised at this time that his condition should be treated by a dermatologist. Dr. Katz further testified that there are many types of dermatitis and that he really could not state the cause. He knew that it was a condition common among men, and that the condition could lie dormant for years.

Defendant's evidence consisted of the testimony of George Hamm, Captain of the SS ALCOA PURITAN, and the testimony of Dr. Benjamin A. Gross, dermatologist. The captain stated that the plaintiff never reported his condition to the medical officer, nor requested any medical treatment. He further stated that the showers were inspected twice a week; that they were clean and clear; that the floors were tiled; that the shower area was cleared and washed daily; and that he never received any complaints as to the showers. The testimony of Dr. Gross consisted chiefly of his expert opinion that no one could make a diagnosis of plaintiff's condition without complete laboratory studies; and that it would be extremely difficult to say whether germs or fungi were on the shower room floor unless scrapings from the floor were examined under a microscope.

As a merchant seaman the plaintiff was entitled to free care and hospitalization at any United States Public Health Service facility following his departure from the SS ALCOA PURITAN. 42 C.F.R. 32.6 et seq. As stated before, the medical log shows that the plaintiff did not seek treatment while aboard the ship. Upon his departure from the ship he did not

request a Master's Certificate from the vessel's captain to receive treatment or gain admittance to a United States Public Health Service facility. Nevertheless, it is not necessary that a seaman possess a Master's Certificate to obtain admission to a United States Public Health Service Hospital. Admission may be obtained by the seaman filing an application stating the facts of his last employment, including the name of the vessel and the date of his service. It is alleged in his claim that when plaintiff arrived in Philadelphia, after the completion of his voyage, his feet and legs were in an inflamed condition. However, plaintiff did not attempt to obtain treatment while in Philadelphia from the United States Public Health Service Hospital which is located at 225 Chestnut Street in Philadelphia. Plaintiff was a seaman with seven years experience, and it certainly must have been known to him that health services were available. Testimony also revealed that the plaintiff's brother was a retired seaman with thirty years experience, and that on several occasions he visited his brother and found him so incapacitated that he was unable to walk. On these occasions, plaintiff's brother testified, he would aid plaintiff into his automobile and take him for a ride. It is difficult for me to comprehend that plaintiff on these occasions did not make one effort to visit the United States Public Health Service Hospital located on Chestnut Street, Philadelphia. In Norris, Law of Seamen (2d Ed. 1962) § 594, p. 685, is stated the following:

"  *  *  *  The fact that United States Public Health Service Hospitals throughout the country are open to seamen for medical treatment is so well known among them that it should preclude the argument that seafarers may be ignorant of their right to free hospitalization and medical care."

■ In view of the foregoing facts, this Court finds it difficult to believe that plaintiff contracted a dermatological condition while aboard the SS ALCOA PURITAN due to its unsanitary conditions. The evidence presented lacks the primary ingredient of fact, namely, what caused the condition of plaintiff's feet.

■■ Under the Jones Act (hereinafter referred to as the Act) the plaintiff must bear the burden of going forward with evidence on all the essential elements of a negligence action. Plaintiff must prove the existence of a duty, the negligent violation of this duty by the defendant, and finally, a causal relationship of the violation to the injury sustained. However, the Act was enacted to provide remedial and welfare legislation for the protection of a seaman and his dependents. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). In view of the intent of Congress the Supreme Court has held that the Act should be liberally construed to accomplish its beneficial purposes. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930).

■ As stated, the gravamen under the Act is negligence and the negligence must be proved by the seaman. Engel v. Davenport, 271 U.S. 33, 36, 46 S.Ct. 410, 70 L.Ed. 813 (1926). The Court is aware that fact finding does not require a mathematical certainty, and to preserve plaintiff's constitutional right to trial by jury, any evidentiary basis for making of a finding on the issue of negligence should be submitted to the jury. Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668 (1956). Even though the issue of negligence may be close, a court should not usurp the function of the jury. Carter v. Schooner Pilgrim, Inc., 238 F.2d 702 (1st Cir. 1956). However, it is to be noted that a mere scintilla of evidence is not enough to require the submission of an issue of negligence to a jury. Hawley v. Alaska Steamship Company, 236 F.2d 307 (9th Cir. 1956).

■ There must be substantial evidence offered by the plaintiff to justify submission of the case to the jury. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1930); Galloway v. United

States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943). After completion of the entire case, this Court was of the opinion that it had witnessed those circumstances which compelled it to direct a verdict for the defendant. The Court concluded that there was only a mere scintilla of evidence shown as to the dermatological condition, and that the plaintiff had failed to prove a causal relationship to the injury sustained. It was the firm opinion of this Court that reasonable men and women could not differ in a finding of no negligence in this case. Plaintiff did not attempt to show that the res ipsa loquitur rule should apply in his case. Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L. Ed. 468 (1948).

■ We have an uncontradicted fact that the plaintiff had a condition of his feet that commenced about two weeks after the inception of the voyage, but as to a history of the condition of his feet before that time the record is silent. A recital by the plaintiff to Dr. Katz, who saw him one time at his home about ten months after plaintiff had left the vessel at New Orleans, is not proof of any fact that the disease of which he complained began and developed within two weeks of the time he started his employment on the vessel. It was the plaintiff's duty to connect the origin of the disease complained of with his employer. The record is absent this proof.

■ I believe that a condition of the feet ordinarily referred to as "athlete's foot" is a common disease among boys and men. Hardly a high school boy, or a college athlete, or a man in the military service, can be found who has not suffered at one time from this condition. Where, how, and when said person contracted it I am sure would be hard for anyone to explain. Was the transmission made from showers, tubs, socks, rugs, carpets, towels, floors, sand on the beach, or what? However, in a suit the proximate cause must have reasonable certainty.

■ As to the other points raised by the plaintiff's brief, we hold that the testimony of Protasio Herrera, a fellow seaman, and Harry Diddlebock, brother of the plaintiff, a retired seaman of thirty years experience, concerning what was usual and customary in the cleaning of shower rooms aboard ships, was inadmissible as being irrelevant and immaterial to the issue. What may have been done on other ships in so far as the cleaning of shower rooms is concerned, does not set up a standard of care, control, usage and maintenance. Two seamen, unless proven to be experts, could hardly set the standard for all ships. There was no proof whatsoever that the condition of the shower room brought about the foot ailment of the plaintiff.

■ As to the admissibility of the testimony that Herrera had a foot condition, there can be no doubt that this was properly excluded. He diagnosed his own condition, but did not say how it arose, when, how long he had it, nor did he describe it in detail. It is just as easy or absurd to say that this was a condition of many years standing with him.

This Court had the opportunity to observe the entire trial, to observe the competency and frankness of all the witnesses involved therein, and to apprise their demeanor. This Court was convinced that the evidence presented could in no way sustain a finding of negligence on the part of the defendant, or a finding of an unseaworthy condition on the vessel, the SS ALCOA PURITAN.

## ORDER

And now, this twenty-eighth day of December, 1964, in accordance with the foregoing Opinion, it is ordered that plaintiff's Motion for New Trial be and the same is hereby denied.