Manuel P. **LEOCADIO**, Plaintiff,

v.

**LYKES BROS. STEAMSHIP COMPANY,**
Inc., Defendant.

Civ. A. No. 13049.

United States District Court
E. D. Louisiana,
New Orleans Division.

March 20, 1968.

574

Ralph E. Orpys, New Orleans, La., for plaintiff.

Kaul Buhler, III, New Orleans, La., for defendant.

CASSIBRY, District Judge:

This is an action by a seaman for maintenance and cure. Originally the plaintiff, Manuel Leocadio, sought also damages under the Jones Act and the General Maritime Law and these claims were disposed of in a trial before a jury on January 19 and 20, 1967, which resulted in a verdict for the defendant, Lykes Bros. Steamship Company, Inc. Prior to that trial it was agreed between counsel that the issue of maintenance and cure would be reserved for trial before the court without a jury.

The claim of the plaintiff arose out of an accident aboard the SS Leslie Lykes, an ocean-going general cargo vessel owned by the defendant, on which the plaintiff was employed as a seaman, a deck maintenance hand. On April 25, 1962 when the vessel was outbound from New Orleans in the Mississippi River, while engaged in securing a boom to a boom cradle, the plaintiff fell five or six feet to the deck, landing on his back. Plaintiff continued the voyage on the SS Leslie Lykes and continued to perform his duties aboard the vessel, until the voyage ended in New Orleans on July 9, 1962, but at the request of the vessel's officers he was examined by doctors in Yokohama and Saigon. It was recommended that he be re-examined and re-evaluated by the Public Health Service Hospital when the voyage ended.

When the plaintiff reported to the Public Health Service Hospital on July 9, 1962, the preliminary diagnosis was a fractured coccyx and he was treated as an out-patient. He remained an out-patient for fourteen months, from July 10, 1962 to September 18, 1963, and during this time he was paid maintenance and cure by the defendant. He was discharged by the hospital on September 18, 1963 because he refused to submit to recommendations of surgery and he had reached the maximum medical improvement possible without surgery. The maintenance payments were terminated at this time.

The plaintiff continued to suffer from his injury and he returned to the Public Health Service Hospital for further medical help on January 24, 1964. Shortly thereafter he consented to the surgery which he had previously refused, was admitted to the hospital for surgery on February 25, and a coccygectomy was performed on April 6. He remained in the hospital until April 22, and was declared fit-for-duty on August 14. The defendant paid him maintenance from April 22, 1964 to August 14, 1964. The total amount of maintenance paid to the plaintiff is $4,392.

The plaintiff is contending that he is owed additional maintenance from September 18, 1963, the time payments were stopped by defendant because he was declared to have reached maximum medical improvement possible without the recommended surgery which he refused, to February 25, 1964 when he re-entered the hospital for surgery, and additional maintenance from August 14, 1964 when he was released by the hospital as fit for duty.

 Clearly the plaintiff is not entitled to the additional maintenance claimed from September 18, 1963 to Feb-

ruary 25, 1964. It is well settled that maintenance and cure is owed by a shipowner to a sick or injured seaman until such time as a seaman reaches maximum cure. 1 Norris, The Law of Seamen, 2d Ed. 1962, sec. 561, p. 633, and cases cited therein. The medical evidence shows that the plaintiff had reached maximum medical cure on September 18, 1963 inasmuch as he refused to submit to the recommended coccygectomy. When tender of proper maintenance and cure is made to a seaman, including non-hazardous surgery, he must follow the expert recommendations of physicians or lose his right to recovery. See Murphy v. American Barge Line Co. (C.A.3), 169 F.2d 61, cert. den. 335 U.S. 851, 69 S.Ct. 133, 93 L.Ed. 406; Gomez v. Alcoa Steamship Co., D.C.Ala., 186 F.Supp. 321 (1960); Diddlebock v. Alcoa Steamship Co., D.C.Pa., 234 F.Supp. 811 (1964). When the plaintiff refused to submit to a coccygectomy, the defendant was justified in discontinuing payments for maintenance and cure.

The evidence in the case does not support the claim for additional payments since August 14, 1964. The plaintiff testified on the trial of the case that he had been unable to return to work since the injury. He continues to have pain at the back of his neck and in his left leg. He is being treated for high blood pressure and hypertension by a physician who has told him that he would send him to another physician to have his back checked when his blood pressure is lowered.

At the suggestion of the court the plaintiff was examined by Dr. H. R. Soboloff shortly before the trial of the case. He examined the plaintiff, ordered an X-ray examination and made a report of his findings. He reported that the clinical examination of the plaintiff was entirely negative from an objective orthopedic standpoint. The plaintiff has subjective complaints of pressure in the buttocks which radiates all the way up to his head. There was nothing in his examination to indicate that the plaintiff could not return to his normal work. In his opinion the plaintiff exemplifies the fact that coccygectomy rarely if ever affords relief of complaints from such an injury.

 Although the plaintiff contends that he is still unable to work because of the pain, the medical evidence shows that further treatment will not improve his condition. Where no further improvement can be expected from further treatment and care of a continuing disability resulting from injuries sustained by a seaman, the seaman has reached maximum cure and no further obligation exists for the shipowner to pay maintenance and cure. See McLeod v. Union Barge Line Co., 204 F.2d 687 (C.A.Pa. 1953); Donovan v. Esso Shipping Co., 152 F.Supp. 347 (D.C.N.J.1957).

For the reasons assigned the claim for maintenance and cure will be denied.