FRUGÉ, Judge.
This is an action by a seaman for maintenance and cure under the General Maritime Law. The cause arises from injuries plaintiff, Raymond v. Edwards, sustained on June 10, 1966 while employed as a seaman.
For some two years prior to his accident, plaintiff worked as a cook or steward for defendant, Statton and Statton Company, Inc., on off-shore drilling rigs operated in the Gulf of Mexico. After a fourteen day tour of service on the rig “Vinegaroon”, plaintiff and other crew members boarded a crew boat to come to shore at Cameron, Louisiana. When plaintiff jumped, or attempted a jump from this crew boat to the dock of a pier at Cameron, he lost his footage and fell between the boat and pier into the water.
As a result of the fall between the vessel and the pier, plaintiff suffered numerous injuries. He complained that he was “hurting all over”, that he was “plumb numb for a few minutes” and had “cut places on his arms and legs” and a “bump on his head”.
Following the accident, plaintiff was driven to Marksville, Louisiana, and hos *388 pitalized on June 11, 1966. He was placed in pelvic traction, received treatment, and on June 24, 1966, was discharged. On June ¿1, he complained to his attending physician that he felt crushed and sore all over, with pain in the chest, lower back, neck, and right knee. All X-rays taken were negative as to bone injury. The diagnosis was: “Abrasions of the right knee and right forearm, generalized contusions of body and strain of back”.
Plaintiff was paid maintenance and cure benefits through and until December 9, 1966, after which date defendant or its insurer discontinued benefits. This suit is for maintenance and cure benefits since that date and for penalties and attorneys’ fees.
Defendant alleged that plaintiff was discharged by his chosen doctors as recovered and reported able to return to work. Furthermore, they alleged that plaintiff has reached maximum recovery since December, 1966, and that therefore no further benefits are due him under the General Maritime Law.
After trial on the merits, the trial court rejected plaintiff’s demands. From this judgment plaintiff has prosecuted this de-volutive appeal in forma pauperis.
The lower court found that the plaintiff was disabled, permanently and totally, but that the medical testimony revealed the fact that there had been no improvement in plaintiff’s condition since the time of the discontinuing of the benefits, and that therefore the obligations of defendants were satisfied.
Although plaintiff alleged error in three specifications, it is the opinion of this court that the sole issue to be decided is whether the lower court was justified in its determination that the plaintiff had reached maximum medical recovery.
A seaman’s right to maintenance and cure is of ancient origin and is founded in the General Maritime Law. Maintenance and cure has been defined by the courts to mean maintenance and care, and is construed to mean proper care, not a positive cure which may be impossible. This seaman’s right has often been analogized to workmen’s compensation, which analogy, however, is quite misleading. The rules of law applying to each are quite different. Under the compensation statutes, the employee is entitled to recover against his employer whenever he is injured in the course of his employment. That is the employee’s exclusive remedy. The right to maintenance and cure, however, is not the seaman's exclusive remedy against his employer, but rather a sort of guarantee that regardless of whether or not he can otherwise recover from his employer, he will be medically taken care of up to a certain point.[1]
Of importance in the case at hand is the law as regards the duration of the limits of this liability by the employer for maintenance and care of the seaman. In its opinion, the lower court cited the case of Rocco v. Luckenback S. S. Co., 1963 A.M.C. 2545, in its discussion of the law here applicable. The language cited by the court was as follows:
“ ‘ * * * When we speak of maintenance and cure in the admiralty law we really mean maintenance and care because, of course, the employer is not held at his peril to effect a cure. Loverich Vs. Warner Co. (3 Cir.), 1941 A.M.C. 604, 118 F.(2d) 690, certiorari denied 1941, 313 U.S. 577 [61 S.Ct. 1104, 85 L.Ed. 1535]; Calmar S. S. Corp. Vs. Taylor, 1938, 303 U.S. 525 [58 S.Ct. 651, 82 L.Ed. 993] 1938 A.M.C. 341.’
“Continuing on page 2549, the Court said:
‘Furthermore, the responsibility of the shipowner to provide maintenance and cure extends only until the point of maximum recovery. Calmar S. S. Co. *389 Vs. Taylor, 303 U.S. 525 [58 S.Ct. 651, 82 L.Ed. 993] 1938 A.M.C. 341 (1938); Farrell Vs. United States, 336 U.S. 511 [69 S.Ct. 707, 93 L.Ed. 850] 1949 A.M.C. 613 (1949). The duty to “cure” means proper medical care for a reasonable time and not a positive cure, which may be impossible. Pochasset, 1924 A.M.C. 398, 295 Fed. 6 (1 Cir. 1924). The defendant is not liable for treatment which is only palliative in nature, i. e., that which eases without curing. Stanovich Vs. Jurlin, 1956 A.M.C. 402, 227 F.(2d) 245 (9 Cir. 1955).
“And continuing on page 2550, the Court said:
'There was no evidence that plaintiff could be cured of his neurosis, although he might be benefited by further psychiatric care. This treatment appears to be solely palliative and its prospective efficacy has not been demonstrated. The fact that plaintiff made subsequent visits to the Public Health Hospitals does not prevent a conclusion that maximum cure had been reached. Myers Vs. Isthmian Lines, Inc., 282 F.(2d) 28, 32 (1 Cir. 1960), cert. DENIED 365 U.S. 804 [81 S.Ct. 469, 5 L.Ed.2d 461] (1961). Cf. Ryan Vs. United States Lines Co., 1962 A.M.C. 1188, 303 F.(2d) 430 (2 Cir. 1962). Where medical testimony as to the future condition of the seaman is indefinite or unsatisfactory, it does not justify any award for future maintenance. Campbell Vs. American Foreign S. S. Co., 1941 A.M.C. 410, 116 F.(2d) 926 (2 Cir.) (emotional state of seaman), cert. denied 313 U.S. 573, [61 S.Ct. 959, 85 L.Ed. 1530] 1941 A.M.C. 823 (1941); Donovan Vs. Esso Shipping Co., 1957 A.M.C. 1665, 152 F.Supp. 347 (D.C.N.J., 1957), aff’d 1958 A.M.C. 2096, 259 F.(2d) 65 (3 Cir., 1958), cert. denied 359 U.S. [904] [907, 79 S.Ct. 583, 3 L.Ed.2d 572] 1959 A.M.C. 811 (1959); Brahms Vs. Moore-McCormack Lines 1955 A.M.C. 2240, 133 F.Supp. 283 (S.D.N.Y.1955); Buch Vs. United States, 1955 A.M.C. 713, 220 F.(2d) 165 (2 Cir., 1955). The evidence taken as a whole points to the conclusion that the plaintiff attained his maximum cure by at least August 20, 1959.’ ”
In a fairly recent case, Leocadio v. Lykes Brothers Steamship Co., 282 F.Supp. 573 (Eastern District of La., 1968), the court summarized the employer’s obligations as follows:
“Although the plaintiff contends that he is still unable to work because of the pain, the medical evidence shows that further treatment will not improve his condition. Where no further improvement can he expected from further treatment and care of a continuing disability resulting from injuries sustained by a seaman, the seaman has reached maximum cure and no further obligation exists for the shipowner to pay maintenance and cure. See McLeod v. Union Barge Line Co., 204 F.2d 687 (C.A.Pa.1953); Donovan v. Esso Shipping Co., 152 F.Supp. 347 (D.C.N.J.1957).” (Emphasis ours.)[2]
Applying the law as stated by these cases, the lower court found plaintiff had attained maximum cure on December 9, 1966 when his doctors reported that they had discharged him and recommended that he return to work.
In considering the medical evidence in the record, we find in late November, 1966, Dr. Friedfield of the Marksville Hospital and Dr. T. E. Banks, an orthopedist, had both come to the conclusion that plaintiff had reached maximum medical benefits. They recommend no additional treatment, and also recommended that he return to employment. In addition, plaintiff con- *390 suited Dr. George Schneider in Lake Charles, and Dr. Brian in Alexandria. Dr. Schneider saw him on September 1, 1966, and Dr. Brian saw him on February 13, 1967. Admittedly, none of the doctors found orthopedic symptoms in their examinations.
In argument, plaintiff-appellant asked that this court review carefully the medical testimony of Dr. Charles C. Laurent, a psychiatrist, and the testimony of plaintiff himself. Dr. Laurent was seen by plaintiff after December 9, 1966, although the appointment for the examination was made prior to that time.
In accordance with plaintiff’s recommendations, this court has studied the record very carefully, especially the testimony and evidence as regards these two witnesses.
We shall give a summary of the various testimonies given by Dr. Laurent and by the plaintiff. The bulk of this testimony concerns questions by the attorneys as to the chance of improvement by the plaintiff from his condition at the time that payments were discontinued. The exerpts are as follows:
“Q. Do you know when he will be able to return to gainful employment?
“A. It is my impression that the patient —that the patient's disability will be of — will be indefinite in nature, and quite possibly permanent. It is my opinion that any organic damage at this point would be expected to show no significant degree of improvement, and that if it is possible for him to achieve symptomatic improvement in the area of his chronic depression that — No. 1, such improvement would very likely be— take a period of many months or longer to obtain, and in view of Mr. Edwards limited intellectual resources that a significant degree of improvement might be quite difficult to obtain. * * * [Emphasis ours.]

“Q. In other words then he has reached maximum improvement?
“A. This is impossible to say with certainty. I am hopeful he will be able to achieve some further degree of symptomatic improvement, but it is possible he has reached maximum improvement.

“Q. In other words what you’ve been doing, I gather, is easing his condition, rather than curing it — is that correct ?
“A. Not entirely. The — unfortunately in Mr. Edwards case the greatest part of the treatments that I have felt to be possible for him would be equivalent of the easing of his condition, but the anti-depressive medication, combined with the limited amount of intellectual therapeutic benefit of which he is capable would be designed to attempt to basically improve his condition if such is possible. In effect his condition is such that the treatment has mainly resulted in the treating of symptoms, in that I have in effect been unable to get past this type of treatment with Mr. Edwards. [Emphasis ours.]
“Q. In other words you haven’t seen any improvement since January— didn’t you testify to that earlier?
“A. Yes, to be totally precise there was a period of a few weeks where I felt I was seeing early signs of improvement, but these signs were quite transient, and were not at all continuous. This in part is based on the — one of the guidelines was that there was a period of time where I thought I was seeing— where I saw some early signs of improvement in sexual function, but this was short lived, and reached the original level of malfunction, and *391 during recent months has become more pronounced.
“Q. Doctor, wouldn’t you think though that a period of nine months would he adequate to test his capacity to improve? In your field? And from your standpoint? [Emphasis ours.]
“A. Answering the question in a general manner I would say yes, and in an attempt to apply this to Mr. Edwards I would have to say that I feel the likelihood of (.his showing any degree of significant improvement within any forseeable period of time is poor. [Emphasis ours.]
“Q. But you continue to treat him?
“A. Yes, in that — yes, I am continuing to see him in that I feel that the —what limited degree of emotional support plus limited symptomatic relief from medication make such indicated — in that although far from the ideal result it does represent a limited degree of relief to the patient.
******
“Q. Is your treatment doing him any good, Doctor?
“A. I feel that my treatment is helping him insofar as I feel it is contributing to his' ability to maintain his present level of function, from the standpoint of curative results, although I am hopeful I cannot say that the treatment is progressing toward a correction of his general disorder.” [Emphasis ours.]
* * * * * *
From the testimony of the plaintiff, we find this remark:
“Q. Has he told you he could cure you ?
“A. No. * * *
“Q. (Interruption). * * *. Your doctor ?
“A. No. Sir, the last time he talked in that nature he says: We hope and pray for a good outcome, I cannot tell you the outcome, he says; just hope for the best.”
In his excellent written reasons for judgment, the trial court revealed that he had carefully and meticulously studied the record and medical evidence in this case, and applying the law to the evidence, he ruled this plaintiff had achieved maximum medical improvement. Our review of the record, especially the testimony cited previously, convinces us that he correctly analyzed the evidence, and we agree with the conclusions which he drew from the facts. We, therefore, adopt as our own opinion the following portions of the reasons for judgment which were assigned by the trial judge:
“No one has given any evidence or opinion that his medical treatments and medicines, doctor’s visits, etc., were improving his condition since December 9, 1966. True, this Court finds he is disabled, but his condition has been static since that time and even Dr. Laurent feels, in his expert opinion, that he has gone or improved as far as he can go, and the probability is that ‘his showing any degree of significant improvement within any forseeable period of time is poor’. He ‘thought’ at one time he had noted improvement, but this (thinking) was short-lived and he was back to his original level of malfunction. Quoting further from him: ‘ * * * although I am hopeful, I cannot say that the treatment is progressing toward a correction of his general disorder.’ Admittedly by him and the druggist, both, the drugs prescribed and being used by plaintiff in such stupendous quantities, are ‘pain killers’ and ‘tranquilizers’, only palliative in nature, in no way intended to cure or improve his condition.
“When this is considered together with the testimony of the other doctors who treated him from the beginning, and who are positive that he has reached maximum benefits with no further treatment *392 indicated, the Court feels that he is barred from further benefits since December 9, 1966 * * * ”
Having considered the law and the evidence this court is of the opinion that the lower court’s judgment denying plaintiff’s recovery of benefits, from December 9, 1966 to present, was well founded in law and in fact, and for this reason, we hereby affirm the decision of the lower court, costs to be paid by plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. See generally; Gilmore and Black, (1957) Ch. VI, § 6-10.

. For an excellent discussion of the acceptance of this doctrine by American courts, see the celebrated case of Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).